KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS #158708
epeters@keker.com
ERIC H. MACMICHAEL #231697
emacmichael@keker.com
BAILEY W. HEAPS #295870
bheaps@keker.com
DEEVA SHAH #319937
dshah@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
NIXON PEABODY, LLP and
FORREST DAVID MILDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARMORE MANAGEMENT SERVICES, INC., a California corporation; CARL AND BARBARA JANSEN, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>NIXON PEABODY, LLP, a New York limited liability partnership; FORREST DAVID MILDER, a married individual,<br><br>Defendants. | Case No. 2:20-cv-10111 CAS JEM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)**<br><br>Date: December 21, 2020<br>Time: 10:00 AM<br>Ctrm: 8D<br>Judge: Hon. Christina A. Snyder<br><br>Date Filed November 3, 2020 |

1
DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(A)
Case No. 2:20-cv-10111 CAS JEM

1553643

## TABLE OF CONTENTS

| | Page |
|---|---|
| NOTICE OF MOTION AND MOTION TO TRANSFER VENUE | 6 |
| I. INTRODUCTION | 7 |
| II. BACKGROUND | 8 |
|     A. DC Solar commits fraud. | 8 |
|     B. DC Solar declares bankruptcy. | 9 |
|     C. Solarmore brings suit against DC Solar's bankruptcy estate and *most* of DC Solar's professional advisors. | 9 |
| III. ARGUMENT | 11 |
|     A. Venue is proper in the Eastern District of California. | 12 |
|     B. Transfer will promote the interests of justice. | 14 |
|     C. The parties' private interests also weigh in favor of transfer. | 16 |
|         1. The contacts with the forum weigh in favor of transfer. | 17 |
|         2. The availability of witnesses, access to sources of proof, and convenience of the parties favor transfer. | 18 |
|         3. The cost of litigation favors transfer. | 18 |
|         4. Any indication of forum shopping weighs in favor of transfer. | 19 |
| IV. CONCLUSION | 19 |

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alec L. v. Jackson*,
  2011 WL 8583134 (N.D. Cal. Dec. 6, 2011) ...................................................... 7

*Amazon.com v. Cendant Corp.*,
  404 F. Supp. 2d 1256 ................................................................................ 11, 13

*Callaway Golf Co. v. Corp. Trade, Inc.*,
  No. 09–cv–384, 2010 WL 743829 (S.D. Cal. Mar. 1, 2010) ............................ 14

*Comptroller v. Calhoun First Nat'l Bank*,
  626 F. Supp. 137 (D.D.C. 1985) ...................................................................... 15

*D2L Ltd. v. Blackboard, Inc.*,
  671 F. Supp. 2d 768 (D. Md. 2009) ................................................................. 15

*In re Double Jump*,
  No. 19-50102-gs (D. Nev. Bkr. 2019) ............................................................ 8, 9

*Friedman v. PopSugar, Inc.*,
  No. 18-CV-05888-CAS, 2018 WL 6016963 (C.D. Cal. Oct. 29,
  2018) ........................................................................................................... 15, 17

*United States ex rel. Hallstrom v. Orexis, LLC*,
  2011 WL 13227859 (C.D. Cal. Apr. 29, 2011) ........................................... 11, 16

*Hawkins v. Gerber Prod. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013) ............................................................ 10

*Jolly v. Purdue Pharma L.P.*,
  2005 WL 2439197 (S.D. Cal. Sept. 28, 2005) ................................................. 13

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ...................................................................... 15, 16

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ...................................................................... 16, 18

*Madani v. Shell Oil Co.*,
   No. C07-04296 MJJ, 2008 WL 268986 (N.D. Cal. Jan. 30, 2008) .................... 13

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
   60 F. Supp. 3d 1109 (E.D. Cal. 2014) ................................................................ 11

*Norwood v. Kirkpatrick*,
   349 U.S. 29 (1955) ............................................................................................. 10

*Pueblo v. Nat'l Indian Gaming Comm'n*,
   731 F. Supp. 2d 36 (D.D.C. 2010) ..................................................................... 14

*Rubio v. Monsanto Co.*,
   181 F. Supp. 3d 746 (C.D. Cal. 2016) .......................................................... 10, 16

*SEC v. Carpoff*,
   20-cv-00180-JAM-AC (E.D. Cal.) .................................................................. 8, 12

*Shelby v. Factory Five Racing, Inc.*,
   2009 WL 481555 (C.D. Cal. Feb. 23, 2009) ................................................ 14, 15

*Solarmore Mgmt. Svc., Inc. v. Bankr. Est. of DC Solar Sols., Inc.*,
   No. 2:19-cv-02544-JAM-DB (E.D. Cal. filed Dec. 17, 2019)
   (Mendez, J.) ..................................................................................................... 9, 14

*United States v. Alan Hansen*,
   20-cr-00016-JAM-1 (E.D. Cal) ............................................................................ 8

*United States v. Jeff Carpoff*,
   20-cr-00017-JAM-1 (E.D. Cal.) ........................................................................... 8

*United States v. Joseph Bayliss*,
   19-cr-00182-JAM-2 (E.D. Cal.) ........................................................................... 8

*United States v. Paulette Carpoff*,
   20-cr-00018-JAM-1 (E.D. Cal.) ........................................................................... 8

*United States v. Robert Karmann*,
   19-cr-00222-JAM-1 (E.D. Cal.) ........................................................................... 8

*United States v. Ronald Roach*,
   19-cr-00182-JAM-1 (E.D. Cal.) ........................................................................... 8

*United States v. Ryan Guidry*,
   20-cr-00003-JAM-1 (E.D. Cal.) ........................................................................... 8

*Williams v. Bowman*,
   157 F. Supp. 2d 1103 (N.D. Cal. 2001) ............................................................... 18

*Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*,
   2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) ................................................... 18

**Federal Statutes**

28 U.S.C. § 157 ................................................................................................... 10, 13

28 U.S.C. § 1391(b) ..................................................................................................... 11

28 U.S.C. § 1404 ................................................................................................. *passim*

**Rules**

Local Rule 7-3 ............................................................................................................... 5

Local Rule 123 .............................................................................................................. 7

## NOTICE OF MOTION AND MOTION TO TRANSFER VENUE

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 21, 2020 at 10:00 A.M., or as soon thereafter as the Court directs, Defendants Nixon Peabody LLP and Forrest David Milder move the Court to transfer this action to the Eastern District of California.

Defendants move to transfer pursuant to 28 U.S.C. § 1404. This Court should transfer venue to the Eastern District because (1) Plaintiffs could have brought this case in the Eastern District; (2) nine criminal and civil cases based on the same facts have concluded or are pending in the Eastern District; (3) one of those cases has the same plaintiff, involves the same 20 funds, and will require similar factual and legal determinations; (4) the federal judge who knows the facts and would preside over these very similar issues is in the Eastern District; and (5) the conduct at issue happened in the Eastern District. This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, all files and records in this action, and such additional matters as may be judicially noticed by the Court or may come before the Court prior to a hearing, if any, on this matter

This motion is made following a Local Rule 7-3 conference, which took place on October 21, 2020.

Dated: November 20, 2020      KEKER, VAN NEST & PETERS LLP

By: */s/ Eric MacMichael*
ELLIOT R. PETERS
ERIC H. MACMICHAEL
BAILEY W. HEAPS
DEEVA SHAH

Attorneys for Defendants
NIXON PEABODY, LLP and
FORREST DAVID MILDER

## I. INTRODUCTION

Plaintiffs Solarmore and Carl and Barbara Jansen (collectively, "Solarmore") allege that they were the victims of a complex, long-term tax fraud perpetrated by non-party DC Solar. Starting in 2010, DC Solar created investment funds to sell mobile solar generators to investors, who would receive corresponding tax benefits. Solarmore managed at least 20 of these investment funds over the next eight years. But in 2018, DC Solar's principal employees were charged with wire fraud and money laundering. Seven high-ranking DC Solar employees admitted to operating a tax-credit Ponzi scheme and pleaded guilty in the Eastern District of California before Judge John A. Mendez. The SEC filed a civil suit against the owners of DC Solar, which was also before Judge Mendez in the Eastern District. Eventually, Plaintiff Solarmore also filed suit in the Eastern District of California before Judge Mendez. That case, *Solarmore I*, contained numerous allegations against over 30 entities—including professional appraisers, brokers, accountants, tax service providers, and bankers—that Solarmore believed had aided and abetted DC Solar's fraud in 20 distinct investment funds. *Solarmore I*, which is still ongoing, involves every major professional advisor to DC Solar ***except one***: Nixon Peabody LLP.

Inexplicably, months after filing *Solarmore I* in the Eastern District, Solarmore sued Defendants Nixon Peabody LLP and its partner Forrest David Milder (collectively, "Nixon Peabody") in Los Angeles. This one-off case, *Solarmore II*, involves the same 20 investment funds as *Solarmore I*. *Solarmore II* also parrots many of the allegations in *Solarmore I* verbatim. Nevertheless, although Judge Mendez has presided over **nine** cases involving the same facts and even the same parties, Solarmore seeks to have another judge in another court learn the complexities of this massive fraud scheme. If this case had been brought in the Eastern District of California, it would have immediately triggered a notice-of-related-case and a transfer to Judge Mendez. But because *Solarmore II* is before this Court, § 1404(a) governs and compels a transfer to the Eastern District instead,

7

DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)
Case No. 2:20-cv-10111 CAS JEM

1553643

based on the following indisputable facts:

- Solarmore could have brought this case in the Eastern District.
- Nine criminal and civil cases based on the same facts have concluded or are pending in the Eastern District. These cases include *Solarmore I*, which has the same plaintiff, involves the same 20 funds, and will require similar factual and legal determinations.
- The federal judge who knows the facts and will preside over the very issues presented in *Solarmore I* and *Solarmore II* is in the Eastern District.
- Per Solarmore's own admission, the conduct at issue happened in the Eastern District.

*See* 28 U.S.C. § 1404(a). This Court should transfer *Solarmore II* to the Eastern District of California to promote judicial economy, conserve resources, and minimize the possibility of inconsistent rulings.[1]

## II. BACKGROUND

### A. DC Solar commits fraud.

DC Solar was founded in 2009 and, for nearly all of its existence, operated in the Eastern District of California. *See* Dkt. 1-2 at ¶¶ 14-16 ("*Solarmore II* Compl."). DC Solar's business model entailed creating investment funds to sell mobile solar generators to sophisticated investors, who would receive substantial tax benefits from their investment. *See id*. ¶¶ Preliminary Statement, 22, 26-27, 40-41. DC Solar would then lease the generators from the investment funds and to third parties, like arenas and concert venues, from whom DC Solar would collect lease payments. *Id*. ¶ 22. DC Solar created Solarmore to serve as the managing member of at least 20 of its investment funds. *See id*. ¶ 23. Plaintiff Carl Jansen

---

[1] Should this case be transferred to the Eastern District, Nixon Peabody will immediately file a Notice of Related Case, pursuant to Eastern District of California Local Rule 123, to relate this case to *Solarmore I*. Second, this motion is independent of Nixon Peabody's responsive motions, due on December 11, 2020. *Alec L. v. Jackson*, 2011 WL 8583134, at *1 n.1 (N.D. Cal. Dec. 6, 2011) (holding that a party may bring a motion under § 1404(a) at any time).

was recruited to hold a membership interest in Solarmore. *Id*. ¶ 21. DC Solar also retained Nixon Peabody and Milder for the limited purpose of providing an opinion explaining the tax consequence for investors. *Id*. ¶ 29.

DC Solar's enterprise collapsed in December 2018 when the FBI raided the company's headquarters. *Id*. ¶ 105. Most high-ranking DC Solar employees have since pleaded guilty to wire fraud, money laundering, and similar charges. *See, e.g.*, Dkt. No. 10, *United States v. Jeff Carpoff*, No. 2:20-cr-00017-JAM (E.D. Cal.). Each of these prosecutions occurred in the Eastern District of California before Judge Mendez. The prosecutions arising out of DC Solar's fraud include:

- *United States v. Jeff Carpoff*, 20-cr-00017-JAM-1 (E.D. Cal.)
- *United States v. Paulette Carpoff*, 20-cr-00018-JAM-1 (E.D. Cal.)
- *United States v. Ronald Roach*, 19-cr-00182-JAM-1 (E.D. Cal.)
- *United States v. Joseph Bayliss*, 19-cr-00182-JAM-2 (E.D. Cal.)
- *United States v. Robert Karmann*, 19-cr-00222-JAM-1 (E.D. Cal.)
- *United States v. Ryan Guidry*, 20-cr-00003-JAM-1 (E.D. Cal.)
- *United States v. Alan Hansen*, 20-cr-00016-JAM-1 (E.D. Cal)

Relatedly, the SEC also litigated its civil action against the owners of DC Solar before Judge Mendez in the Eastern District. *See SEC v. Carpoff*, 20-cv-00180-JAM-AC (E.D. Cal.).

### B. DC Solar declares bankruptcy.

Shortly after the FBI raid, the DC Solar entities began filing for bankruptcy in the District of Nevada. Compl. ¶¶ 107-108. The proceedings have since been consolidated and converted from Chapter 11 to Chapter 7. *See* Dkt. Nos. 390, 439, *In re Double Jump*, No. 19-50102-gs (D. Nev. Bkr. 2019).

### C. Solarmore brings suit against DC Solar's bankruptcy estate and *most* of DC Solar's professional advisors.

In late December 2019, Solarmore sought and received permission from the District of Nevada Bankruptcy Court to sue the DC Solar bankruptcy estate and the other entities it believed had caused it harm. *See* Req. for Judicial Notice in Supp.

9

of Motion to Transfer ("RJN") Exs. 2, 3 (Dkt. Nos. 1483, 1487, *In re Double Jump, Inc.*, No. 19-50102-gs (Bankr. D. Nev.)). Solarmore then filed suit in the Eastern District of California before Judge Mendez, the same judge who had presided over the DC Solar criminal and SEC proceedings described above. *See* RJN Ex. 1 (*Solarmore Mgmt. Svc., Inc. v. Bankr. Est. of DC Solar Sols., Inc.* ("*Solarmore I*"), No. 2:19-cv-02544-JAM-DB (E.D. Cal. filed Dec. 17, 2019) (Mendez, J.)). Solarmore stated that venue was "proper in [the Eastern District] . . . because a substantial part of the events or omissions giving rise to [Solarmore's] claims occurred in Benicia, California, which is located in this judicial district." *Id.* Dkt. No. 1 ¶ 78. The relevant events were the creation of the 20 investment funds that Solarmore had managed.

In *Solarmore I,* Solarmore sued two sets of defendants: (1) the "core defendants," which include various DC Solar corporate entities, the owners of DC Solar, and some of their associates, *see id.* ¶¶ 7-24; and (2) various professional entities—including another fund managing member, appraisers, brokers, accountants, tax service providers, and bankers—that it believed had aided and abetted DC Solar's fraud, *id.* ¶¶ 25-53. The *Solarmore I* complaint referenced Nixon Peabody and catalogued the role Solarmore believed Nixon Peabody had played in DC Solar's operation, but Solarmore elected not to sue Nixon Peabody in that action, *see id.* ¶¶ 145, 162, 262.

Solarmore waited nearly a year before filing this action—repeating many of the same allegations as it set forth in *Solarmore I*—against Nixon Peabody and Milder, a tax partner in the firm, in Los Angeles County Superior Court. *See Solarmore II* Compl. Solarmore alleges six California state-law claims against Nixon Peabody: (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Unjust Enrichment; (4) Negligent Misrepresentation; (5) Legal Malpractice; and (6) Aiding and Abetting Negligent Misrepresentation. The claims against Nixon Peabody in *Solarmore II* are based on the same underlying facts and transactions alleged

against the other professional advisors in *Solarmore I*. Solarmore has not provided any explanation for why *Solarmore II* was filed in a state court in Los Angeles and against only Nixon Peabody, despite containing similar claims to *Solarmore I* and despite the numerous references to Nixon Peabody in the *Solarmore I* complaint.

Nixon Peabody's counsel accepted service on October 5, 2020. Nixon Peabody then removed the case to the Central District of California for two reasons. *See* Notice of Removal, Dkt. 1. *First,* the case is "related to" DC Solar's pending bankruptcy proceeding, although the causes of action here are "non-core." *Id.*; *see* 28 U.S.C. § 157(b)(1). *Second,* Solarmore's claims, although brought under California law, place Nixon Peabody's interpretation and application of the federal Internal Revenue Code at issue. Notice of Removal, Dkt. 1 ¶¶ 27-28.

Now Nixon Peabody asks this Court to transfer the case to the Eastern District of California.

## III. ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice," this Court "may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of section 1404(a) is to 'prevent the waste of time, energy, and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1212 (S.D. Cal. 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Courts generally consider the threshold question of whether venue would be proper in the transferee court; if so, courts then weigh the "public" interest-of-justice factors and the "private" convenience factors to determine whether to transfer the litigation. *E.g., id.* at 1213-14; *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 760-67 (C.D. Cal. 2016).

Although Nixon Peabody bears the burden of demonstrating that transfer is proper under Section 1404(a), that burden is substantially less than a transfer under the doctrine of forum non conveniens. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32

11
DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)
Case No. 2:20-cv-10111 CAS JEM

1553643

(1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience.") (citation omitted). When ruling on motions to transfer based on § 1404(a), "the court may consider undisputed facts outside of the pleadings." *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014).

"The interest of justice factor," which includes "judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)). This case should be transferred based on the "interests of justice" factor alone; however, the other two factors also weigh heavily in favor of transfer to the Eastern District.

### A. Venue is proper in the Eastern District of California.

The first step in the § 1404(a) analysis is to determine whether the case could have been brought in the transferee forum. *United States ex rel. Hallstrom v. Orexis, LLC*, 2011 WL 13227859, at *1 (C.D. Cal. Apr. 29, 2011). "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b).

Here, as Solarmore itself concedes, "a substantial part of the events" occurred in the Eastern District; therefore, venue is proper in that District. As Solarmore explicitly stated in *Solarmore I*, venue related to DC Solar's scheme was "proper in [the Eastern District] pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to [Solarmore's] claims occurred in Benicia, California, which is located in this judicial district." *Solarmore I* Compl., RJN Ex. 1 ¶ 78.

The exact "events or omissions" that gave rise to Solarmore's claims in

*Solarmore I* also underlie Solarmore's claims in *Solarmore II*. Solarmore's claims against Nixon Peabody arise from Nixon Peabody's provision of legal opinions letters to Solarmore and DC Solar related to 20 specific investment funds. *See Solarmore II* Compl. ¶ 3 (listing specific funds). Solarmore's lawsuit **against every other defendant** in the Eastern District is predicated on the **same** 20 investment funds. Moreover, although Nixon Peabody is not a party in *Solarmore I*, Nixon Peabody and its opinion letters are referenced multiple times in the *Solarmore I* complaint to explain the structure of those same 20 transactions. *See, e.g., Solarmore I* Compl., RJN Ex. 1 ¶ 145 ("Nixon Peabody . . . issued tax opinion letters to Plaintiff Purchasers, and the Funds opining to the valid tax benefits."); ¶ 162 (referencing the basic structure of the relevant funds as including "a tax opinion letter from Nixon."). The factual allegations are also the same: entire portions of the *Solarmore I* complaint appear verbatim in *Solarmore II*. *Compare, e.g., Solarmore I* Compl. ¶¶ 289-292 to *Solarmore II* Compl. ¶¶ 99-103 (describing the Solarsense deal with identical language in both complaints). Both complaints arise from the same DC Solar transactions and involve many similar—and in some cases the same—questions of fact and law.

      Solarmore can provide no rationale for why the Eastern District is the proper venue for *Solarmore I* but not *Solarmore II*.[2] By contrast, the *Solarmore I* complaint contains no allegations that the underlying transactions took place in the Central District at all, let alone in any substantial manner. Thus, both cases stem from the same conduct, which substantially occurred in the Eastern District. *Solarmore II* could have been brought in the Eastern District.

      And just as in *Solarmore I*, *Solarmore II*'s claims also could have been

---

[2] Moreover, Judge Mendez also determined the Eastern District was an appropriate venue for both the criminal matters and the SEC enforcement action arising from these same transactions. *See, e.g.*, RJN Ex. 4, *SEC v. Carpoff*, 20-cv-00180-JAM-AC, Dkt. 1 at ¶ 3 (E.D. Cal. Jan. 24, 2020) (stating venue is proper in the Eastern District because the "transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district").

brought in federal district court instead of state court. In *Solarmore I*, filed only with the Bankruptcy Court's permission, Solarmore alleges various state law claims nearly identical to those raised here, like negligence and professional malpractice. Those claims—against almost all of DC Solar's professional advisors other than Nixon Peabody—arise from the same case or controversy as the claims against the bankruptcy estate. *See Solarmore I* Compl. ¶ 73. And Solarmore asserts that federal subject matter jurisdiction over *Solarmore I* is proper under 28 U.S.C. § 157, which addresses federal jurisdiction over "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." *See id.* ¶ 74. Given the similarity of the claims in the two cases, Solarmore cannot maintain that this action is any less related to the ongoing bankruptcy proceeding than *Solarmore I*.

Thus, venue is proper in the Eastern District.

### B. Transfer will promote the interests of justice.

After determining that venue is proper in the transferee district, the Court must consider whether transfer will promote the interests of justice. "The question of which forum will better serve the interest of justice is of predominant importance on the question of transfer, and the factors involving convenience of parties and witnesses are in fact subordinate." *Madani v. Shell Oil Co.*, No. C07-04296 MJJ, 2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008) (internal quotation marks and citation omitted). "The pendency of related actions in the transferee forum is a ***significant factor*** in considering the interest of justice factor." *Jolly v. Purdue Pharma L.P.*, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) (emphasis added) (citing *A .J. Indus., Inc., v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974)). "Litigation of related claims in the same tribunal is ***strongly favored*** because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results." *Amazon.com*, 404 F. Supp. 2d at 1261 (emphasis added) (quoting *Durham*

14
DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)
Case No. 2:20-cv-10111 CAS JEM

1553643

*Prods., Inc.*, 537 F. Supp. at 1243).

The pendency of nine related cases—*Solarmore I*, seven DC Solar criminal cases, and a related SEC civil enforcement action—in the Eastern District strongly militates in favor of transfer. All nine cases, but especially *Solarmore I*, arise out of the same nucleus of operative facts that Solarmore alleges here. Because the legal and factual questions presented in the *Solarmore* cases may overlap, having the cases assigned to the same judge would "avoid the possibility of inconsistent judgments." *Callaway Golf Co. v. Corp. Trade, Inc.*, No. 09–cv–384, 2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010). As the complaint in *Solarmore I* indicates, Judge Mendez may already have to consider Nixon Peabody's role to adjudicate Solarmore's claims against the other professional defendants involved in the same 20 transactions (and vice versa). Judge Mendez will also have to determine what Solarmore's damages are (if any), and whether Solarmore's claims are barred in whole or in part by *in pari delicto* or contributory negligence.[3] Solarmore has yet to proffer any reason why Judge Mendez should not preside over both Solarmore cases.

Judicial economy is also served by the Eastern District's familiarity with the parties and underlying facts in this exceedingly complex case. *Shelby v. Factory Five Racing, Inc.*, 2009 WL 481555, at *4 (C.D. Cal. Feb. 23, 2009) ("The 'interests of justice' are best served by transferring this case to the United States District Court for the District of Massachusetts, which has already dealt extensively with this dispute between the parties."). Even where the legal issues could differ, the transferee court's "respective knowledge of the parties and facts is also relevant." *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40-41

---

[3] For many of the relevant investment funds, Solarmore was primarily owned by Jeff Carpoff, the owner of DC Solar who eventually pleaded guilty to wire fraud and money laundering. The defendants in *Solarmore I* and *II* may both ask the Court to address factual and legal questions related to Mr. Carpoff's—and thus, Solarmore's—involvement with and knowledge of the fraud.

1553643

(D.D.C. 2010).[4]  Judge Mendez has "already dealt extensively with this dispute" by overseeing *nine* cases against the DC Solar principals.  *Shelby*, 2009 WL 481555, at *4.  The seven criminal cases alone span 173 docket entries and have generated seven dispositions from the District Court.  Judge Mendez is intimately familiar with the facts surrounding the DC Solar tax-credit scheme.  The Eastern District's experience with each facet of the DC Solar litigation creates a uniquely advantageous position to understand this case.

Thus, the Court should transfer this case to the Eastern District to avoid the "'wastefulness of time, energy and money that § 1404(a) was designed to prevent,'" "'a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts.'" *Friedman v. PopSugar, Inc.*, No. 18-CV-05888-CAS, 2018 WL 6016963, at *10 (C.D. Cal. Oct. 29, 2018) (quoting *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26 (1960)).

C.   **The parties' private interests also weigh in favor of transfer.**

Although the interests of justice trump the parties' private interests, the Court may also consider "an 'individualized, case-by-case consideration of convenience and fairness'" to the parties in analyzing a motion for transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted). In *Jones*, the Ninth Circuit set forth ten factors to consider:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory

---

[4] *See also Comptroller v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985) (transferring an action to a district which had cases arising from "the same factual underpinning," even though the actions in the transferee court involved slightly different legal issues); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 784 (D. Md. 2009) ("Litigation in the same court avoids duplicative litigation when one court has already invested substantial time and energy in the related case.").

> process to compel attendance of non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the public policy of the forum state.

*Hallstrom*, 2011 WL 13227859, at *1 (summarizing *Jones*, 211 F.3d at 498-99). Many of these factors are archaic in light of technological advances, *see Rubio*, 181 F. Supp. 3d at 764, or irrelevant to the proposed transfer here, *e.g., Jones*, 211 F.3d at 498-99 (considering which state is most familiar with the governing law). Nevertheless, the relevant factors weigh heavily in favor of transfer.

### 1. The contacts with the forum weigh in favor of transfer.

Solarmore has had significant contacts with the Eastern District and those contacts relate directly to their causes of action, far more so than any contacts in the Central District. The *Solarmore II* complaint alleges that the 20 underlying transactions may have some tangential relationship to the Central District because the parties have benefited from doing business in California generally. Outside of that general statement, the *Solarmore II* complaint lacks any allegation that the underlying transactions occurred in the Central District.

By contrast, and as Solarmore admits in the *Solarmore I* complaint, "a substantial part of the events or omissions giving rise to [Solarmore's] claims"—the same 20 underlying transactions—"occurred in Benicia, California" in the Eastern District. *Solarmore I* Compl. ¶ 78. The "operative facts" did not occur within the Central District; each transaction substantially took place in the Eastern District, which is also unsurprisingly where every major criminal proceeding related to this tax-credit scheme occurred. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or the subject matter, [Plaintiff's] choice is entitled only to minimal consideration.") (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir.1968)). Thus, these factors favor transfer.

1553643

### 2. The availability of witnesses, access to sources of proof, and convenience of the parties favor transfer.

The convenience of the parties also weighs in favor of transfer. Solarmore's California corporate headquarters are in Sacramento, which is in the Eastern District. *See* RJN Ex. 5 (Solarmore Statement of Information, California Secretary of State (Aug. 19, 2020)). Solarmore is also familiar with the Eastern District, which is where Solarmore opted to file *Solarmore I* against over 30 other defendants. Nixon Peabody's counsel is in the Bay Area, which is considerably closer to Sacramento than Los Angeles. And although Solarmore's local counsel is in Los Angeles, Solarmore's primary counsel is in Phoenix, Arizona. The remaining parties also reside out-of-state and are, therefore, neutral. For example, Plaintiffs Carl and Barbara Jansen reside in Illinois and have not provided any connection to Los Angeles. *Solarmore II* Compl. at ¶ 2. Nixon Peabody is headquartered in Boston, Massachusetts, and Defendant Forrest David Milder is a partner in Nixon Peabody's Boston office. Overall, the Eastern District is more convenient for the parties.

Moreover, the majority of the DC Solar witnesses are likely in the Eastern District, where DC Solar was based. These witnesses would be better served by a Sacramento forum than the current Los Angeles forum. The events and transactions described in the *Solarmore II* complaint occurred in the Eastern District. The criminal cases—and the related sources of proof—were in the Eastern District. To the extent Nixon Peabody relies on evidence and testimony from *Solarmore I*, those sources of proof will be more readily accessible in the Eastern District. *See Friedman*, 2018 WL 6016963, at *10 ("[E]ven the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."). These factors heavily favor transfer.

### 3. The cost of litigation favors transfer.

Given the proximity of the witnesses, the Eastern District will likely be a less

18
DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)
Case No. 2:20-cv-10111 CAS JEM

1553643

expensive forum to litigate this matter. More importantly, Judge Mendez is already familiar with nine other cases related to *Solarmore II*, as well as the underlying entities and transactions. It will be less time-consuming to familiarize the Court with the facts and parties involved and avoid the difficulty of trying to coordinate cases in two different courts. Judicial economy will also reduce costs for the parties, which supports transfer.

### 4. Any indication of forum shopping weighs in favor of transfer.

A significant "factor [under section 1404(a)] is the prevention of forum shopping." *Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *5-6 (N.D. Cal. Oct. 14, 2003). "If there is **any indication** that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (emphasis added). Although courts generally defer to a plaintiff's choice of forum, such deference is minimal where the operative facts occurred outside that forum. *See Lou*, 834 F.2d at 739. Here, rather than filing its claims in the Eastern District—where the majority of the events occurred, where the seven related criminal cases and the SEC enforcement action were heard, and where *Solarmore I* is ongoing, Solarmore inexplicably filed *Solarmore II* in Los Angeles. This factor also favors transfer to the Eastern District.

## IV. CONCLUSION

A court in the Eastern District is already set to consider the *Solarmore I* claims concerning the same plaintiff and the same transactions as *Solarmore II*. That court has already presided over nine cases related to the parties and facts underlying those transactions. The Court should promote judicial economy and convenience by transferring this case to the Eastern District of California.

1553643

Dated: November 17, 2020          KEKER, VAN NEST & PETERS LLP


                                  By: */s/ Eric MacMichael*
                                       ELLIOT R. PETERS
                                       ERIC H. MACMICHAEL
                                       BAILEY W. HEAPS
                                       DEEVA SHAH

                                       Attorneys for Defendants
                                       NIXON PEABODY, LLP and
                                       FORREST DAVID MILDER