Steven W. Thomas (State Bar No. 168967)
Emily Alexander (State Bar No. 220595)
Mark Forrester (State Bar No. 208097)
Stephen Sorensen (State Bar No. 199408)
THOMAS, ALEXANDER, FORRESTER
& SORENSEN LLP
14 27th Avenue
Venice, California 90291
Tel.: (310) 961-2536
Fax: (310) 526-6852

Attorneys for Plaintiffs
SOLARMORE MANAGEMENT SERVICES,
INC. a California corporation

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLARMORE MANAGEMENT SERVICES, INC. a California Corporation,<br><br>   Plaintiffs,<br><br>  v.<br><br>NIXON PEABODY LLP, a New York limited liability partnership; FORREST MILDER,<br><br>   Defendants. | CASE NO. 2:20-cv-02446-TLN-DB<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Judge: Hon. Troy L. Nunley<br>Date Filed: December 10, 2020<br>Trial Date: Not yet set |

TABLE OF CONTENTS

ALLEGATIONS OF THE COMPLAINT ................................................................................. 2

ARGUMENT ............................................................................................................................ 4

I.    The "Graveman" of the Complaint is Misrepresentation and Fraudulent Omission
      Not Legal Malpractice ................................................................................................. 4

II.   Plaintiff Has Standing to Bring Its Legal Malpractice Claim .................................. 6

      A.  Legal Malpractice Claims May Be Assigned in California When the Assignee Has a
          Relation to the Defendant or Underlying Claim ................................................ 6

      B.  The Assignee Plaintiffs Have A Clear Nexus to Solarmore and Nixon ............... 7

      C.  The Assignee Plaintiffs have Independent Standing to Sue Nixon for Legal
          Malpractice as Intended Third-Party Beneficiaries .......................................... 9

          1. The extent to which the transaction was intended to affect the plaintiff ...... 10

          2. The Foreseeability of harm ................................................................... 10

          3. The Degree of certainty that the Plaintiffs suffered Injury ......................... 11

          4. "Moral blame" and "Future Harm" ........................................................ 11

III.  Solarmore Brings Direct, Not Derivative Claims Against Defendants ....................... 12

      A.  Solarmore's Claims are Direct because It Seeks Redress for Damages Suffered by
          Solarmore and Not the Funds ................................................... .....12

      B.  Solamore's Claims are Direct Because the Funds Could Not Enfore Solarmore's
          Claims ...................................................................................... 14

IV.   The Complaint Sufficiently Alleges Each Count ................................................... 14

      A.  Negligent Misrepresentation ................................................................. 15

      B.  Aiding and Abetting Negligent Misrepresentation ..................................... 16

      C.  Breach of Fiduciary duty ..................................................................... 17

      D.  Legal Malpractice ............................................................................. 17

      E.  Breach of Contract ............................................................................ 18

CONCLUSION ..................................................................................................... ..18

ii

**Cases**

*3123 SMB LLC v. Horn*, 2015 WL 13762612, at *2 (C.D.Cal. 2015)...................................... 9

*Bosco Legal Servs., Inc. v. Hiscox Inc.*, 2018 WL 3012936, at *9 (C.D.Cal. 2018) ................... 18, 19

*Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1162–63 (E.D. Cal. 2014) ................................... 18

*Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F.Supp. 1136 (E.D. Cal. 1987) ............. 18

*Curtis v. Kellogg & Andelson*, 73 Cal.App.4th 492, 504-05 (1999)................................................4, 9

*Farmers & Merchants Trust Co. v. Vanetik*, 33 Cal.App.5th 638, 655 (2019) ................................ 11

*Goldberg v. Frye*, 217 Cal.App.3d 1258, 1268 (1990) ..................................................................... 13

*Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 289 (1976) ............................................................ 10

*Hourany v. Taxman*, 2017 WL 6461990 (Cal.App. 2017)................................................................ 15

*In re Lesansky*, 25 Cal.4th 11, 16 (2001) ........................................................................................ 14

*Jackson v. Rogers & Wells*, 210 Cal.App.3d at 346 ....................................................................... 9, 10

*Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019 (1990)................................................ 9, 10

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 160214, at *6 (N.D.Cal. 2009) ............................................................................................................................................. 7

*Moore v. Anderson Zeigler Disharoon Gallagher & Gray*, 109 Cal.App.4th 1287, 1294-95 (2003) ........................................................................................................................................... 12

*Moore v. City of Vallejo* (E.D. Cal. 2014) 73 F.Supp.3d 1253 (ED. Cal. 2014) .............................. 18

*Navellier v. Sletten*, 262 F.3d 923, 934 (9th Cir. 2001) .................................................................. 13

*Reilly v. Greenwald & Hoffman, LLP*, 196 Cal.App.4th 891, 900 (2011)......................................... 12

*Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 185 (2003)............................................................ 15

*Stocco v. Gemological Institute of America, Inc.*, 975 F.Supp.2d 1170, 1177 (S.D.Cal. 2013)......... 21

*Sunguinetti v. Viewlogic Systems, Inc.*, 1996 WL 33967, at *6 (N.D.Cal. 1996)............................. 17

*Sutter v. General Petroleum Corp.*, 28 Cal.2d 525, 531 (1946) ...................................................... 15

*White Mountains Reinsurance Co. of America v. Borton Petrini, LLP*, 221 Cal.App.4th 890, 910 (2013)......................................................................................................................................... 9

**OPPOSITION TO MOTION TO DISMISS**

Defendant Nixon Peabody ("Nixon") was the architect of the DC Solar Transactions. For twenty-nine transactions from March 2011 and up through November 2018, Nixon represented that the DC Solar Transactions were real, legitimate and supported by actual cash flow from leases of mobile solar generators ("MSGs"). In reality, as Nixon knew, DC Solar was simply shuffling around the money invested by liability company members ("Members") to give the appearance of business activity. Nixon continued to lend its name to, and assist in, the sale of hundreds of millions of dollars of limited liability company interests being marketed and sold fraudulently and in violation of California securities laws.

By its Motion, Nixon Peabody now asks this Court to dismiss Plaintiff's entire case on three bases: (1) that assignees of the proceeds of Plaintiff Solarmore Management Services, Inc.'s ("Solarmore") claims lack standing to bring assigned legal malpractice claims, (2) that Solarmore itself lacks standing to bring its claims directly, and (3) that the Complaint fails to adequately plead it causes of action. Each argument fails, for several reasons.

*First*, the assignment of legal malpractice claim impacts only the claim for legal malpractice since the "gravamen" of the action is fraud and misrepresentation, not legal malpractice. While Nixon was in fact counsel to Solarmore, Nixon is not accused of missing a statute of limitations or failing to advise a client of a settlement opportunity; it is accused of <u>lying</u> to Plaintiff about the structure of DC Solar, omitting material facts necessary to make its statements factually correct, and aiding and abetting a massive fraud. At heart, that is not malpractice.

*Second*, and as to the legal malpractice claim itself, the proceeds of that claim <u>are</u> assignable here. California's prohibition against assignment of claims of legal malpractice applies only where public policy concerns are implicated. *See*, *e.g.*, *Curtis v. Kellogg & Andelson*, 73 Cal.App.4th 492, 504-05 (1999) ("[N]umerous public policy considerations are involved in the determination of whether claims for legal malpractice should be assignable."). Where, as here, the client initiates a lawsuit for legal malpractice against its own attorney and then assigns the proceeds of the claims to the intended beneficiaries of the attorney's work; where the owner of the entity client remain attached to the lawsuit; where the assignees are not merely assignees, but also appointed attorneys-in-fact to prosecute the

claim; and where the assignees independently have standing to sue Nixon for the conduct alleged independent of Solarmore, there is no prohibition on assignment of the proceeds of the claim.

*Third*, Solarmore's claims are not derivative of the Funds' rights because Solarmore seeks redress for damage done exclusively to Solarmore, not to the Funds, and the Funds would not be able to bring claims for Solarmore's direct injuries. Nixon's argument here is not only incorrect, however; it pretends both that a separate action against it brought *by the Funds* does not already exist, and that it did not argue it should be absolved of responsibility *in that action* because it <u>only</u> represented Solarmore. That is, in *Solar Eclipse Investment Fund III, et al v CohnReznick LLP, et. al., Case No. 19STCV45775* (Superior Court for the County of Los Angeles), the Funds (and the Investor Members) set forth their separate bases for recovery, which include many causes of action distinct from those at issue here, but also malpractice for separate duties owed to the Funds. Nixon has repeatedly argued, however, that only Solarmore can bring that action, since it represented only Solarmore. That cannot be true if Solarmore's claims are derivative. Which they are not.

*Finally*, Nixon's argument that the claims are insufficiently pled simply ignores the allegations of the Complaint and its own recycled efforts to dismiss similar allegations before. In *Solar Eclipse Investment Fund III, et al v CohnReznick LLP, et. al.*, the Court addressed similar allegations of Nixon's behavior and similar arguments for failure to state a claim. The Court rejected each, *see* Order Overruling Defendants Nixon Peabody and Forrest David Milder's Demurrer to the SAC (attached as Exhibit B to Sorensen Decl.), and this Court should do the same. To whatever extent it would not, Plaintiffs requests the opportunity to amend. At this stage of the pleadings, Solarmore's case should move forward in any case.

For each of the foregoing reasons, and each that follow, Plaintiff respectfully requests that the Motion to Dismiss be denied.

## ALLEGATIONS OF THE COMPLAINT

DC Solar Solutions was in the business of creating investment funds ("Fund(s)") that owned Mobile Solar Generators ("MSG(s)") and solicited tax beneficial investments. Compl. ¶ 19. In exchange for the investments, DC Solar agreed to deliver a specified number of MSGs on a specified date. *Id*. at ¶ 48. After the first few Funds were created, Solarmore was created to manage the

**OPPOSITION TO MOTION TO DISMISS**

Funds. *Id.* at ¶ 23. Solarmore owned a small percentage of the fund at first, but held a future

majority interest in the Funds. *Id.* at ¶ 24. Solarmore paid valuable consideration for its interests in

the Funds. *Id.* at ¶ 25. Investors paid a percentage of the cost of the MSGs, and received a dollar-

for-dollar tax rebate on their investment. *Id.* at ¶¶ 25, 26. Around 2016, Halo Management

("Halo") was formed to replace Solarmore. *Id.* at ¶¶ 89, 91.

Nixon, through its attorney, Forrest Milder ("Milder") provided legal services to Solarmore,

among others. *Id.* at ¶¶ 112, 113. Under Solarmore's contract with Nixon, Nixon was required to

provide legal advice that was accurate and complete and to advise Solarmore on issues relating to the

DC Solar affiliates which could affect Solarmore's interests in the Funds. ¶ 125. Nixon prepared tax

opinion letters ("Tax Opinion(s)") assuring that the MSGs qualified for the tax credit to be provided

to investors prior to investment. *Id.* at ¶ 29. The Tax Opinions assured investors that diligent efforts

were being made to lease the MSGs and ensure that the MSGs would continue to qualify for tax

credits. *Id.* at ¶ 34. Nixon knew that the Tax Opinions would be provided to the Funds and their

Investors. *Id.* at ¶ 35. Solarmore was billed and paid for Nixon's services. *Id.* at ¶¶ 37-39.

In or by 2013, based on an IRS audit, Nixon became aware of significant issues which

endangered the tax benefits expected by investors. *Id.* at ¶ 60. Milder attempted to prevent the audit

from increasing in scope. *Id.* at ¶ 62. As of 2013, Nixon and Milder were aware that DC Solar

Distribution had created or reported minimal revenue from leases of MSGs. *Id.* at ¶ 63. Nixon and

Milder were aware that the MSGs were not being rented at the rate indicated in the closing

documents. *Id.* at ¶ 82. The actual lease revenues were less than 4% of the cash requirement under

DC Solar's lease program. *Id.* at ¶ 95. The pitiful lease revenues greatly diminished the upside of the

investment, endangering the tax benefits sought. *Id.* at ¶ 96. Nixon was aware of the leasing

problem. *Id.* at ¶ 98. In or around August 2016, the IRS reported that the Fund it had audited (Solar

Eclipse Investment Fund III) was a sham because it involved no meaningful risk or opportunity for

gains, that the investor was not a bona fide partner, and that items of credit and deduction were

reallocated to Solarmore. *Id.* at ¶ 65. The report also indicated that the type of appraisal being used

as a cost basis was improper, and that it was greatly overstated. *Id.* at ¶¶ 65-67.

Despite being aware of the issues raised by the audit, Nixon and Milder continued to issue Tax Opinions with the same structure whose validity had been put into grave doubt. *Id*. at ¶ 68. The Tax Opinions even state that there was "no litigation or governmental proceeding pending or threated against or involving the Mobile Solar Facilities, the Company, the Managing Member, the Sponsor, the Lessee, the Investor Member, or any Affiliates of the foregoing, that would materially adversely affect the business of the Company or the condition of the Mobile Solar Facilities." *Id*. at ¶ 69. Nixon and Milder misrepresented the value of the MSGs in the Tax Opinions. *Id*. at ¶ 139. Nixon provided Solarmore legal advice that knew or should have known was false. *Id*. at ¶ 126.

Nixon concealed material facts from its client Solarmore. *Id*. at ¶ 116. Nixon and Milder knew that Solarmore was unaware of the lease revenue problems or the red flags raised by the audit of one of the funds. *Id*. at 143. This failure was a breach of the fiduciary duty Nixon owed to its client as its lawyer. *Id*. Solarmore's failure was aimed at, and did cause Solarmore to continue creating, managing and anticipating ownership of still more investment funds. *Id*. at 142. Solarmore relied on Nixon's legal advice. *Id*. at ¶ 127. Nixon's failure to disclose material information to its client proximately caused Solarmore operate as manager of new funds, invest in new funds, and pay Nixon fees for its "services." *Id*. at ¶ 145.

Nixon provided false information for the benefit of the DC Solar affiliates because Nixon and Milder knew that if it stopped issuing the opinions, the DC Solar affiliates would implode. *Id*. at 162. In December 2018, law enforcement agents raided DC Solar's headquarters, precipitating the rapid demise of DC Solar.

## ARGUMENT

### I. The "Gravamen" of the Complaint is Misrepresentation and Fraudulent Omission, Not Legal Malpractice

Solarmore's assignment of the proceeds of its claims was allowed under California law because the gravamen the claims are misrepresentation and fraudulent omissions, not professional negligence. *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, 2009 WL 160214, at *6 (N.D.Cal. 2009) ("[F]raud 'is a distinct wrong and is no more a necessary incident to the rendition of

legal services than dishonesty is to any other profession.  The avoidance of fraudulent conduct requires no special skill or knowledge, but only basic precepts of honesty and integrity.'").

Solarmore's complaint contains not a single allegation that Nixon performed its legal work without reasonable care.  Instead, in each count, Plaintiff supports its claim with allegations of intentional deception.  *See, e.g.*, Compl. ¶ 82 ("Nixon and Milder were aware that the MSGs were not being leased at the rates as indicated in the Fraud Documents."); ¶ 98 ("Nixon was aware of the lagging sublease revenues while continuing to execute the Tax Opinions, ensuring additional Fraud Documents and Funds were created."); ("Nixon and Milder knew that Solarmore Management and Jansen did not know the truth about the lease revenues and the audits of the Funds") (¶143); ("Nixon and Milder concealed information from and ensured that Solarmore Management and Jansen were not informed about certain information, to ensure additional Funds would be created to grow their revenue") (¶154); ("Nixon and Milder provided substantial assistance and encouragement by issuing and continuing to issue the Tax Opinions after knowing the structure would not result in the Tax Credits and that the purported lease revenues were significantly lower") (¶159).

Those allegations are tied expressly to causes that are not "malpractice":

| Count | Allegation | Complaint ¶ |
|---|---|---|
| I. Breach of Fiduciary Duty | 116. Nixon and Milder breached the fiduciary duty by failing to provide Solarmore Management or Jansen, the information it had related to the lack of justification for the Tax Opinions. | 116 |
| II. Breach of Contract | Defendants breached the contract by providing legal advice that it knew or should have known was incorrect. | 126 |
| III. Unjust Enrichment | Nixon and Milder benefited from [] hundreds of thousands of dollars from Solarmore Management, to continue executing Fraud Documents, which it knew were premised on false assumptions. | 133 |
| IV. Negligent Misrepresentation | Nixon and Milder knew that Solarmore Management and Jansen did not know the truth about the lease revenues and the audits of the Funds. | 143 |
| VII. Aiding and Abetting Negligent Misrepresentation | Nixon and Milder provided substantial assistance and encouragement by issuing and continuing to issue the Tax Opinions after knowing the structure would not result in the Tax Credits and that the purported lease revenues were significantly lower than originally indicated. | 159 |
| | | |

In contrast, the *Jackson* and *Kracht* cases upon which Nixon relies both based their holdings on findings that the conduct complained of amounted to a failure of the attorney to exercise reasonable care and skill in performing their duties. *Jackson v. Rogers & Wells*, 210 Cal.App.3d at 346; *Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019 (1990), n.3. Because the gravamen of the Complaint is misrepresentation and fraudulent omission, all of Solarmore's claims—let alone the *proceeds* of those claims—are assignable under California law.

## II. Plaintiff Has Standing to Bring Its Legal Malpractice Claim

Plaintiff has standing to bring its malpractice claim because the gravamen of the complaint is misrepresentation and fraudulent omission. Even if the only claim at issue was legal malpractice, however, the proceeds of that claim would still be assignable because (1) the public policy considerations underlying the rule against assignment of legal malpractice claims are not implicated; and (2) the assignees have independent standing to sue Nixon for the conduct alleged.

### A. Legal Malpractice Claims **May** Be Assigned in California When the Assignee Has a Relation to the Defendant or Underlying Claim

The general policy in California that legal malpractice claims cannot be assigned to third-parties is not absolute. *3123 SMB LLC v. Horn*, 2015 WL 13762612, at *2 (C.D.Cal. 2015) ("This [non-assignability of legal malpractice claims] rule is not without exception.") Legal malpractice causes of action can be assigned to third parties when doing so does not offend the purposes of the policy. *See, e.g., White Mountains Reinsurance Co. of America v. Borton Petrini, LLP*, 221 Cal.App.4th 890, 910 (2013) ("[T]he analysis of why the public policy reasons for barring assignment of legal malpractice actions first identified in *Goodley* simply *do not hold* when the assignment occurs under circumstances like those in this case."); *Curtis v. Kellogg & Andelson*, 73 Cal.App.4th 492, 504-05 (1999) ("[N]umerous public policy considerations are involved in the determination of whether claims for legal malpractice should be assignable."). In *White Mountain,* the California Court of Appeals reversed the trial court for "mechanically applying the rule prohibiting the sale and assignment of a single legal malpractice claim to conclude [assignor] improperly assigned the claim …" Id. at 895. Accordingly, the Court must analyze whether public policy dictates against assignment based on the facts of the specific case.

California courts disfavor assignment of legal malpractice claims because "assignability would encourage commercialization of claims, and would force attorneys to defend themselves against persons to whom no duty was ever owed." *Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019, 1023-24 (1990). These public policy considerations are more applicable to the common cases in which assignment of legal malpractice causes of action are proscribed – where the assignee either has no relationship to the assignor or was previously an adversary of the assignor. *See, e.g. Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 289 (1976) (involving an assignment of a legal malpractice claim to a party with no connection to the client); *Kracht v. Perrin, Gartland & Doyle*, 219 Cal.App.3d 1019 (1990) (involving assignments of legal malpractice claims to parties who were the insured clients' adversaries in underlying lawsuits); *Jackson v. Rogers & Wells*, 210 Cal.App.3d 336 (1989) (involving assignments of legal malpractice claims to parties who were the insured clients' adversaries in underlying lawsuits).

Where these public policy considerations are not implicated, no bar on assignments of legal malpractice claims exists. In *3123 SMB LLC*, the United States District Court for the Central District of California held that there was no bar to assignment "because Plaintiff was also a client of Defendant in the underlying action, this is not a case in which a legal malpractice claim has been assigned to a third party lacking any relation to the Defendant or the underlying claim." *3123 LLC v. Horn*, 2015 WL 13762612, at *2 (C.D.Cal. 2015)(emphasis added). That is the case here—the Assignee Plaintiffs also relied on Nixon's fraudulent misrepresentations in the same transactions. Thus, Solarmore's assignment to the Assignee Plaintiffs raises no public policy concerns.

**B. The Assignee Plaintiffs Have A Clear Nexus to Solarmore and Nixon**

In this particular case, where the assignor is the party that actually filed the lawsuit in the first place, before any assignment took place, and where the assignee was the intended beneficiary of the Defendant lawyer's work, the public policy considerations in *Kracht* are not implicated.

*First*, Nixon's duty is not owed solely to Solarmore and Solarmore is not Nixon's "one intended beneficiary." Because Nixon provided its work and advice to the Assignee Plaintiffs in this action, the Assignee Plaintiffs were Nixon's "intended beneficiary." Nixon made this abundantly

clear by (1) addressing each of its Opinion Letters to the Investor Member and to the Fund itself; (2) by starting each letter with, "You have requested our opinion as to the application of certain United States federal income tax laws…"; and (3) by closing each letter by stating, "This Opinion is provided solely for the benefit of the Investor Member and the Company in connection with the Transactions." *See, e.g.,* Nixon Peabody Tax Opinion Re: Investment in Solar Eclipse Investment Fund III, LLC, March 23, 2011 (Exh. A to Sorensen Decl.) at 1, 53. As such, Solarmore cannot be considered Nixon's "one intended beneficiary" of Nixon's advice.

*Second*, assignability would not force Nixon to defend themselves against persons to whom no duty was ever owed. As receivers of Nixon's Opinion Letters, and interested parties that Nixon knew and intended would rely on its work, Nixon clearly owed the Assignee Plaintiffs a duty of care. *Farmers & Merchants Trust Co. v. Vanetik*, 33 Cal.App.5th 638, 655 (2019) ("[W]here an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the client, the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is 'the end aim of the transaction.'") Because Nixon owed the Assignee Plaintiffs a duty of care in performing its work, it cannot be said that Nixon will be forced "to defend themselves against persons to whom no duty was ever owed." *Kracht*, 219 Cal.App.3d at 1023-24.

*Third*, allowing assignment of Solarmore's legal malpractice claim against Nixon to the Assignee Plaintiffs does not debase the legal profession because Solarmore filed this action on its own behalf long before any assignment was made or contemplated to the Assignee Members[1]. In every case cited by Nixon, the claims were brought against the defendants *after* assignment of the claims. The fact that the case was already pending when assignment was made debunks any notion that allowing such assignment could "(1) encourage unjustified lawsuits or (2) generate increased malpractice lawsuits, burdening the profession, the court system and (to the extent malpractice premiums would inevitably rise and be passed to the consumers) the public." *Id.* Just as in *3123 SMB LLC*, the Assignee Plaintiffs already had causes of action of their own against Nixon before

**OPPOSITION TO MOTION TO DISMISS**

Solarmore assigned them any rights to its own claims. Allowing the Assignee Plaintiffs to pursue Solarmore's claims in no way expands the scope of cases that could, will be or have been brought against Nixon and instead promotes economy by reducing the legal efforts required by both sides.

*Finally*, nonassignability is not necessary to "protect the integrity of the uniquely personal and confidential attorney-client relationship." Nixon Motion to Dismiss filed May 20, 2022 (MTD) at 6 (citing *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg*, 30 Cal.App.4th 1373, 1383). While concerns over the integrity and confidentiality of the attorney-client relationship may factor into an involuntary assignment of claims or where the client assigns its claims to its adversary, they certainly do not come into play when the client himself files a suit against its own attorney. *Reilly v. Greenwald & Hoffman, LLP*, 196 Cal.App.4th 891, 900 (2011) ("Generally, the filing of a legal malpractice action against one's own attorney results in a waiver of the privilege, thus enabling the attorney to disclose, to the extent necessary to defend against the action, information otherwise protected by the attorney-client privilege."). The Assignee Plaintiffs are not "impacting the integrity and confidentiality" of an attorney-client relationship—Solarmore did that when it filed suit.

In short, none of the public policy considerations which are weighed in determining whether legal malpractice claims are assignable are implicated here.

## C. The Assignee Plaintiffs have Independent Standing to Sue Nixon for Legal Malpractice as Intended Third-Party Beneficiaries

Assignee Plaintiffs have independent standing to sue Nixon for legal malpractice because the duty of care alleged in the complaint is owed not only to Solarmore, but also to the Assignee Plaintiffs as intended beneficiaries of Nixon's Opinion Letters. Attorneys owe a duty of care to a nonclient when the nonclient is the intended beneficiary of the attorneys' work. *Moore v. Anderson Zeigler Disharoon Gallagher & Gray*, 109 Cal.App.4th 1287, 1294-95 (2003) ("[I]t has been settled in California that an attorney may be liable to nonclients in limited circumstances where the nonclient was the *intended beneficiary* of the attorney's services.") This is especially true where the "end aim" of the attorney's services is to provide a benefit to those third parties. *Farmers & Merchants Trust Co. v. Vanetik*, 33 Cal.App.5th 638, 655 (2019) ("[W]here an attorney gives his client a written opinion with the intention that it be transmitted to and relied upon by the plaintiff in dealing with the

client, the attorney owes the plaintiff a duty of care in providing the advice because the plaintiff's anticipated reliance upon it is 'the end aim of the transaction.'");

Factors considered in determining whether an attorney owes a duty to a third party include: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Navellier v. Sletten*, 262 F.3d 923, 934 (9th Cir. 2001) (citing *Goodman v. Kennedy*, 18 Cal.3d 335 (1976)). Each of these factors is supported by the allegations of the Complaint and the Opinion Letters.

### 1. The extent to which the transaction was intended to affect the plaintiff

In determining whether an attorney owed a duty to a third party, "[t]he predominant inquiry … is whether the principal purpose of the attorney's retention [was] to provide legal services for the benefit of the plaintiff." *Goldberg v. Frye*, 217 Cal.App.3d 1258, 1268 (1990). They were. The Opinion Letters that Nixon was engaged to produce are addressed to the Funds and the Investors thereto and expressly state, "This Opinion is provided solely for the benefit of the Investor Member and the Company in connection with the Transaction." Exh. A to Sorensen Decl. at 53.

### 2. The foreseeability of harm

Nixon was well aware of the potential harm that could result from improper conduct in performing its work – the intention of the Opinion Letters, as expressed by Nixon was to induce investment in the funds. *See, e.g.*, Exh. A to the Sorensen Decl. at 2 ("[T]his Opinion was written to support the promotion or marketing of the transaction(s) or matters addressed in the opinion."; *Id.* at 53 ("This letter may be used and relied upon by the Investor Member…"). Plainly, if the intention of the Opinion Letters was to induce the Investor Member to invest, misinformation in the Opinion Letters as a result of incompetent work by Nixon could foreseeably cause the investors to lose the benefit—and capital—of their investments.

### 3. The degree of certainty that the plaintiffs suffered injury

The damages suffered by Solarmore include, but are not limited to "attorneys' fees paid to Nixon and Milder, costs of acquiring the hundred percent ownership in Solar Management, the cost of acquiring one percent in each of the Funds, and any damages that result from the personal guarantees that were required in each of the Fund Documents." *See, e.g.*, Compl. ¶¶ 121, 129. Further, Solarmore was forced to pay "at least one million dollars of penalties and interest to the IRS, which Nixon and Milder determined would be avoided because of the Tax Credits for the benefit of Solarmore Management…" *Id* at 110. Nor can it be denied that the Assignee Plaintiffs suffered injury. *See, e.g.*, MTD at 1 ("In December 2018, law enforcement agents raided DC Solar's headquarters and revealed that many of the mobile solar generators sold never existed. DC Solar's scheme collapsed…"); MTD at 11 ("Solarmore's claims for relief are thus 'incidental' to the injury to the Funds.").

### 4. "Moral blame" and "Future Harm"

Moral turpitude includes attorney conduct that shows a deficiency in "trustworthiness, honesty, fairness, candor, and fidelity to fiduciary duties." *In re Lesansky*, 25 Cal.4th 11, 16 (2001). The Complaint alleges that "Nixon and Milder provided substantial assistance and encouragement by issuing and continuing to issue the Tax Opinions after knowing the structure would not result in the Tax Credits and that the purported lease revenues were significantly lower than originally indicated." Knowingly providing misinformation that was material to Solarmore and the Assignees was classic moral turpitude by Nixon.

Further, and as to future harm, where an attorney provides an Opinion expressly for the benefit of investors—those who ultimately stand to gain or lose by relying on such opinions—and for the purpose of inducing such investors to invest, it must be held to owe a duty to those investors. Any other rule would provide no incentive to attorneys to competently perform their work and cause investors to continue to lose their investments based on misplaced reliance on incompetent work by attorneys, and have no recourse.

Because all of the factors in determining whether Nixon owed a duty to the Assignee Plaintiffs weigh in favor of a finding that it did owe such a duty, Assignee Plaintiffs have standing to sue Nixon for its breach of such duty.

## III. Solarmore Brings Direct, Not Derivative Claims Against Defendants

### A. Solarmore's Claims are Direct because It Seeks Redress for Damages Suffered by Solarmore and Not the Funds

Solarmore has direct claims against Nixon because Solarmore seeks redress for damages that Solarmore alone—and not the Funds—sustained. Where a shareholder plaintiff is induced by a defendant's misstatements to invest in or form a corporation, and that corporation suffers loss as a result of the misstatements, the shareholder plaintiff has a direct claim against the defendant, even if the corporation also has claims against the defendant. *Sutter v. General Petroleum Corp.*, 28 Cal.2d 525, 531 (1946) ("[T]he dual nature of the injury does not necessarily preclude an action by the stockholder as an individual. Defendants, by their promises and representations induced plaintiff to form the corporation and invest his money therein, and then breached their duty of honest dealing with him."); *see also Hourany v. Taxman*, 2017 WL 6461990 (Cal.App. 2017) (Affirming trial court's ruling that where plaintiffs "alleged they were induced to invest based on false promises," "there is sufficient information … to characterize this suit as a direct action as opposed to derivative.") It is the inducement to invest in the first place that is actionable directly by the individual shareholder. *Sutter*, 28 Cal.2d at 531-32 ("It is true that the corporations suffered injury … but the fraud was practiced on Sutter in the first instance and he was induced to form the corporation [] and invest his money by reason of that fraud.") This is because when an investor relies on misrepresentations in making their investment decisions, he personally suffers the damage that results. *Small v. Fritz Companies, Inc*., 30 Cal.4th 167, 185 (2003) ("Plaintiff here did not attempt to bring a derivative action, however. His complaint does not allege injury to the corporation or a wrong common to the entire body of stockholders, but only to those stockholders who actually relied on defendants' misrepresentations.")

Nixon relies almost entirely on the opinions of this court in *Solarmore Management Services, Inc. v. Bankruptcy Estate of DC Solar Solutions*, 2021 WL 3077470 (E.D.Cal. July 21, 2021) ("*Solarmore I*") and 2022 WL 359245 (E.D.Cal. February 7, 2022) ("*Solarmore II*"), baselessly declaring that "[t]his Court has already decided this issue on nearly identical facts." MTD at 11. Nixon ignores the critical difference between that case and this case that distinguishes a direct claim from a derivative claim—that *Solarmore I* and *Solarmore II* sought relief for damages caused to the Funds, whereas in this case, Solarmore seeks damages it personally suffered.

In *Solarmore I*, the Court found:

"Here, the Complaint alleges that Plaintiff was the managing member and part owner of various LLC's that purchased mobile solar generators. All the claims against Heritage Bank seek redress from being fraudulently induced to make those purchases. Thus, similar to the plaintiffs in *PacLink*, the harm suffered by Plaintiff was a diminution in the value of its membership interest in the LLCs due to **their purchase** of generators. This injury is merely incidental to the injury suffered by the LLC. Because the gravamen of the complaint is injury to the whole body of the LLC's members, it is for the LLC to institute and maintain a remedial action."

*Solarmore I*, 2021 WL 3077470, at *3 (emphasis added). Similarly in *Solarmore II*, the Court found:

"Here the gravamen of the Plaintiff's complaint is that the Funds were fraudulently induced to purchase the MSGs and that Heritage, among others, assisted in this fraud … Plaintiff does not have standing to pursue the losses it obtained **from the Funds' investment in the MSGs** …"

*Solarmore II*, 2022 WL 359245, at *3 (emphasis added). In both *Solarmore I*, and *Solarmore II*, the Court found that Solarmore lacked standing to bring its claims because the claims sought redress for the defendants inducing the *Funds* to purchase non-existent MSGs. In *this* case, a different action brought against a different defendant based on different complaints with different allegations, Solarmore seeks redress for harm that Nixon caused Solarmore by inducing Solarmore to form and invest in the Funds. Solarmore does not here seek to recover the losses that the funds sustained, but its own losses. Solarmore's losses include "attorneys fees paid to Nixon and Milder, costs of acquiring the hundred percent ownership in Solarmore Management, the cost of acquiring one percent in each of the Funds, the Additional Damages, and any damages that result from the personal guarantees that were required in each of the Fraud Documents." Compl. ¶ 121. Attorney's

fees paid by Solarmore cannot be the Funds' damages. "Solarmore Management paid Nixon's invoices for these legal services under the contract." Compl. ¶ 124.

Here, Solarmore was an individual investor that was induced by Nixon's false statements to form and invest in the Funds and pay Nixon moneys that never belonged to the Funds. Therefore, Solarmore's claims are direct, not derivative.

**B. Solarmore's Claims are Direct Because the Funds Could Not Enforce Solarmore's Claims**

Solarmore's claims cannot be derivative of the Funds because the Funds could not even bring *these* claims against Nixon. "The U.S. Supreme Court characterized derivative actions as cases involving rights that a corporation could have enforced in court. In contrast, a direct action is appropriate where the legal right at stake attaches to an individual investor." *Sunguinetti v. Viewlogic Systems, Inc.*, 1996 WL 33967, at *6 (N.D.Cal. 1996) (citations omitted).

As discussed above, unlike *Solarmore I* and *Solarmore II*, the claims here are for damages that Solarmore alone sustained—not the Funds. *See, e.g.*, Compl. ¶ 124 ("Solarmore Management paid Nixon's invoices for these legal services under the contract.")

More fundamentally, the Funds could not have enforced the rights sought to be enforced here because the duties alleged in the Complaint are based on duties Nixon owed to Solarmore derived from a contract between Nixon and Solarmore. *See, e.g.*, Compl. ¶ 114 ("As attorney for Solarmore Management, Nixon and Milder owed Solarmore Management a fiduciary duty, which includes a duty of loyalty."); ¶ 123 ("Solarmore Management and Nixon entered into a contract to provide legal services relating to its interest in each of the Funds."); Compl. ¶ 141 ("Nixon and Milder were Solarmore Management's attorneys and had a duty to disclose the truth to their clients.").

The legal right at stake attaches to Solarmore, because the duties alleged in the Complaint were owed to Solarmore; not to the Funds. As such, Solarmore's claims are direct; not derivative.

## IV. THE COMPLAINT SUFFICIENTLY ALLEGES EACH COUNT

In considering a motion to dismiss for failure to state a claim, the court generally accepts the allegations in the complaint as true, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Cortez v. City of Porterville*, 5 F.

Supp. 3d 1160, 1162–63 (E.D. Cal. 2014) (citing *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.2008)). A court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim. *Moore v. City of Vallejo* (E.D. Cal. 2014) 73 F.Supp.3d 1253 (ED. Cal. 2014). Unless an evidentiary matter was incorporated in the plaintiff's complaint, it could not usually be considered by the court on a motion to dismiss for failure to state a claim. *Cory Van Rijn, Inc. v. California Raisin Advisory Bd.*, 697 F.Supp. 1136 (E.D. Cal. 1987).

Viewed "in the light most favorable to the party opposing the motion" and "resolv[ing] all doubts in the pleader's favor," Plaintiffs have stated a claim

### A. Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim sufficiently states "(1) which fact was misrepresented, (2) why, when he or she made the supposed misstatement, the speaker lacked reasonable grounds for believing it to be true, (3) that the speaker intended to induce its reliance, and (4) that it suffered damages because it relied on the misrepresentation, not for some other reason." *Bosco Legal Servs., Inc. v. Hiscox Inc.*, 2018 WL 3012936, at *9 (C.D.Cal. 2018).

Plaintiff alleges which fact was misrepresented: the value of the MSGs. Compl. ¶ 139 ("Specifically, Nixon and Milder misrepresented the value of the MSGs in the Tax Opinions."). The Complaint alleges that the value used was massively overstated. Compl. ¶67 ("The taxpayer used its related-party purchase price of $150,000 per unit to calculate the tax credit … Exam estimates the taxpayer's cost basis of one unit was less than $25,000 per unit in that year.")

Plaintiff alleges how the speaker knew: The IRS issued a report stating that the value of the MSGs was overstated. Compl. ¶ 66 ("The Report further provides, … "The taxpayer (Solar Eclipse Investment Fund III, LLC) used a related-party circular transaction and an unacceptable appraisal to overstate the value of its energy property.")

Plaintiff alleges that the speaker intended to induce its reliance. Compl. ¶ 35 ("Nixon and Milder were aware and knew that the Tax Opinions would be provided to the Purchasing Members to ensure they were comfortable with the prospect of the Tax Credits and to indicate that the benefits were available to the Purchasing Members.")

Plaintiff alleges that it suffered damages because it relied on the misrepresentation. Compl. ¶ 145 ("Because Solarmore Management and Jansen did not know the truth, which Nixon and Milder knew, they continued to operate as the Manager of new Funds, and continued to pay Nixon's attorney's fees and invoices, and continued to purchase a one-percent membership interest.")

Similarly, the Complaint satisfies the *Bosco* requirements for the misrepresentation that the Funds were not under audit. *Which fact was misrepresented*: "Nixon and Milder misrepresented that the Fraud Documents and transactions related to the Funds were [not] under audit by the IRS and the impact these audits would have on the Funds" (Compl. ¶ 140); *How the speaker knew*: "At the latest, Nixon was made aware of the 2013 IRS Audit in 2013, which raised significant issues with the structure and likelihood of the Purchasing Members and Funds receiving the Tax Credits." (Compl. ¶ 60); *That the speaker intended to induce reliance*: "Nixon and Milder were aware and knew that the Tax Opinions would be provided to the Purchasing Members to ensure they were comfortable with the prospect of the Tax Credits and to indicate that the benefits were available to the Purchasing Members." (Compl. ¶ 35); *That the plaintiff suffered damages*: "Because Solarmore Management and Jansen did not know the truth, which Nixon and Milder knew, they continued to operate as the Manager of new Funds, and continued to pay Nixon's attorney's fees and invoices, and continued to purchase a one-percent membership interest in each of the Funds." (Compl. ¶ 145).

Regardless of whether Nixon is correct that it is "nonsensical" that a business owner or the business would rely on opinions of professionals (MTD at 15), the allegations required by *Bosco* are all in the Complaint, and negligent misrepresentation is sufficiently pled.

## B. Aiding and Abetting Negligent Misrepresentation

The Complaint adequately alleges the who, what, when, where, and how the misrepresentation was made. The Complaint alleges who: Ronald Roach. Complaint at ¶ 76 ("Roach approached Jansen in or around December 2014, and indicated that he should take over Solarmore Management, as the one-hundred percent owner."). The Complaint alleges what: "The Principals ensured that Jansen was informed that the MSGs had a value in excess of the remaining balance on the Promissory Notes plus $10,000 for each MSG." Compl. ¶ 80. The Complaint alleges when:

**OPPOSITION TO MOTION TO DISMISS**

1   December 2014.  Compl. ¶ 76 ("Roach approached Jansen in or around December 2014, and

2   indicated that he should take over Solarmore Management, as the one-hundred percent owner.")

### C.  Breach of Fiduciary Duty

4        Nixon claims that the Breach of Fiduciary Duty claim (Count I) fails because it does not

5   specify which portions of the Tax Opinion lacked justification, nor specific information Nixon knew

6   about the lack of justification.  This argument fails for the same reason that its argument against the

7   Negligent Misrepresentation claim fails: the Complaint alleges that the value used for the MSGs in

8   the Tax Opinions was wildly overstated (Compl. ¶¶ 67, 139) and that Nixon knew the value was

9   overstated from the IRS report (Compl. ¶ 66).

### D.  Legal Malpractice

11       Plaintiff has sufficiently alleged a legal malpractice claims.  Plaintiff alleges the duty to use

12  such skill, prudence and diligence as members of his or her profession commonly possess or exercise.

13  Compl. ¶¶ 148, 149 ("Solarmore Management was a client of Nixon and Milder … As a client, Nixon

14  and Milder owed a duty to use the skill, prudence, and diligence as commonly exercised by other

15  members of the legal profession.").  Plaintiff alleges breach of that duty.  Compl. ¶ 150 ("Nixon and

16  Milder breached this duty by perpetuating the Fraud Documents, including the Tax Opinions, and the

17  Funds' transactions to the detriment of their client, Solarmore Management.")  Plaintiff alleges that

18  Nixon misrepresented the value of the MSGs in the Tax Opinions.  Compl. ¶ 139.  Plaintiff alleges

19  that the IRS Report, of which Nixon and Milder were aware, stated that the value stated was at least

20  six times too high.  Compl. ¶ 67.  Plaintiff alleges that perpetuating this dissemination of false

21  information through its Tax Opinions was a breach of Nixon's duty to Solarmore.  Compl. ¶ 150.

22  Plaintiff alleges a proximate causal connection.  Compl. ¶ 154 ("Nixon and Milder concealed

23  information from and ensured that Solarmore Management and Jansen were not informed about

24  certain information, to ensure additional Funds would be created to grow their revenue.").  Plaintiff

25  alleges damages.  Compl. ¶ 109 ("In learning the information that Nixon and Milder were aware of,

26  as early as 2013, the Plaintiffs incurred substantial costs and damages in an attempt to correct the

27  damages caused by Nixon and Milder.").  Plaintiff thus has satisfied the general pleading

28  requirements for stating a claim for legal malpractice.

## E. Breach of Contract

Nixon argues that the breach of contract cause of action fails because the terms of the contract in the Complaint are "made-up" and because it fails to allege any breach. Both arguments fail.

Motion to dismiss is not the forum for disputing facts or calling allegations "made-up." "When considering a motion to dismiss, a court must accept as true all 'well-pleaded factual allegations.'" *Stocco v. Gemological Institute of America, Inc.*, 975 F.Supp.2d 1170, 1177 (S.D.Cal. 2013). If Nixon wants to dispute facts, the time for that will come, but it is not now. Calling an allegation "made-up" is insufficient grounds to dismiss.

Nixon's second argument fails for the same reason. Nixon claims that there is no allegation that Nixon breached the agreement, but the Complaint clearly alleges "Nixon and Milder incorrectly advised Solarmore Management and Jansen that the Tax Credits would be authorized and that Solarmore Management would become the owner of numerous MSGs, which had a value in excess of the Promissory Notes that were due by the Funds to DC Solar Solutions." Compl. ¶ 128. Nixon calls this statement "conclusory," but, true or false, the allegation only makes statements of fact. Taken together, that Nixon had a contractual duty to provide accurate and complete advice and that Nixon incorrectly advised Solarmore allege a contractual duty and a breach of that duty.

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully asks that the Court deny Defendant's Motion to Dismiss. If the Court should grant the Motion in whole or in part, Plaintiff respectfully requests leave to amend.

DATED: July 1, 2022

THOMAS, ALEXANDER, FORRESTER & SORENSEN LLP

By: /s/ *Stephen Sorensen*

Steven W. Thomas
Emily Alexander
Mark Forrester
Stephen Sorensen
Thomas, Alexander, Forrester & Sorensen LLP
14 27th Avenue
Venice, California 90291
Tel:   (310) 961-2536
Fax:   (310) 526-6852

# CERTIFICATE OF SERVICE

I, Jose Perez, declare as follows:

I am employed in Los Angeles, CA. I am over the age of eighteen years and not a party to this action. My business address is Thomas, Alexander, Forrester & Sorensen LLP, 14 27th Avenue, Venice, CA 90291. On July 1, 2022, I served the within: **MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on the interested parties in this action addressed as follows:

X (BY ELECTRONIC MAIL) By transmitting such document(s) electronically via the Eastern District of California's CM/ECF system, to the persons at the electronic mail addresses listed below.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on July 1, 2022, in Los Angeles, CA.

_Jose Perez_
Jose Perez