1   KEKER, VAN NEST & PETERS LLP
    ELLIOT R. PETERS #158708
2   epeters@keker.com
    ERIC H. MACMICHAEL #231697
3   emacmichael@keker.com
    JULIA L. ALLEN #286097
4   jallen@keker.com
    BENJAMIN D. ROTHSTEIN #295720
5   brothstein@keker.com
    BAILEY W. HEAPS #295870
6   bheaps@keker.com
    DEEVA SHAH #319937
7   dshah@keker.com
    CHRISTINE M. ZALESKI #331727
8   czaleski@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
10  Facsimile:    415 397 7188

11  Attorneys for Defendants
    NIXON PEABODY LLP and
12  FORREST DAVID MILDER

13                  UNITED STATES DISTRICT COURT

14              EASTERN DISTRICT OF CALIFORNIA

15                   SACRAMENTO DIVISION

16  SOLARMORE MANAGEMENT                     Case No. 2:20-cv-02446-TLN-DB
    SERVICES, INC., a California corporation,
17                                           **REPLY IN SUPPORT OF DEFENDANTS
                Plaintiffs,                  NIXON PEABODY, LLP AND FORREST
18                                           DAVID MILDER'S MOTION TO
         v.                                  DISMISS**
19
    NIXON PEABODY, LLP, a New York limited   DATE:      On submission
20  liability partnership; FORREST DAVID     TIME:      On submission
    MILDER, a married individual,            CTRM:      2
21                                           JUDGE:     Hon. Troy L. Nunley
                Defendants.
22                                           Date Filed:  December 10, 2020

23                                           Trial Date:  Not yet set

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     ARGUMENT........................................................................................................1

     A.    California law prohibits assignment of legal malpractice actions. ..........................1

          1.     The gravamen of the Complaint is legal malpractice. .................................1

          2.     California law rejects Assignees' novel "clear nexus" exception. ..............2

          3.     Assignees lack independent standing to assert Solarmore's claims. ...........5

     B.    Assignees lack standing to pursue derivative claims..............................................5

     C.    The Complaint fails to allege sufficient facts to sustain each claim.......................7

          1.     Negligent Misrepresentation, Breach of Fiduciary Duty (Counts IV, I)..........................................................................................................................8

          2.     Aiding and Abetting Negligent Misrepresentation (Count VII).................9

          3.     Legal Malpractice (Count V).......................................................................9

          4.     Breach of Contract (Count II)....................................................................10

          5.     Unjust Enrichment (Count III)...................................................................10

III.    CONCLUSION...................................................................................................10

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Federal Cases**

*3123 SMB LLC v. Horn*,
    2015 WL 13762612 (C.D. Cal. Apr. 13, 2015) ...........................................................................4

*Brown v. Takeuchi Mfg. Co. (U.S.), Ltd.*,
    2021 WL 3723218 (E.D. Cal. Aug. 23, 2021)........................................................................9, 10

*Busbice v. Vuckovich*,
    2018 WL 6272047 (N.D. Ill. Dec. 1, 2018)...............................................................................3

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976)....................................................................................................................5

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................................................................................6

*Drazan v. Atl. Mut. Ins. Co.*,
    2010 WL 2629576 (N.D. Cal. June 29, 2010)...........................................................................7

*Eurolog Packing Grp., N. Am., LLC v. EPG Indus., LLC*,
    2019 WL 1873295 (C.D. Cal. Feb. 14, 2019)...........................................................................6

*In re Gabriel Techs. Corp.*,
    2017 WL 6016287 (Bankr. N.D. Cal. Dec. 4, 2017) ................................................................3

*Hammett v. Sherman*,
    2021 WL 4692949 (S.D. Cal. Oct. 7, 2021) ..............................................................................7

*Iezza v. Saxon Mortg. Servs., Inc.*,
    2010 WL 3834041 (C.D. Cal. Sept. 28, 2010) .......................................................................10

*Ivey v. Spilotro*,
    2012 WL 2788980 (D. Nev. July 9, 2012) ..............................................................................10

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,
    2009 WL 160214 (N.D. Cal. Jan. 20, 2009)..............................................................................2

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) .....................................................................................................8

*Leonberger v. Wells Fargo Bank*,
    2013 WL 3242298 (N.D. Cal. June 25, 2013)...........................................................................8

*Lesa, LLC v. Fam. Tr. of Kimberley & Alfred Mandel*,
    2016 WL 1446770 (N.D. Cal. Apr. 13, 2016).........................................................................3

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

*In re S&B Surgery Ctr.*,
   707 F. App'x 928 (9th Cir. 2017) ...................................................................................3, 4

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...........................................................................................8

*Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*,
   No. 19-cv-02544, 2021 WL 3077470 (E.D. Cal. July 21, 2021)..................................1, 5, 6, 7

*Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*,
   No. 19-cv-02544, 2022 WL 358245 (E.D. Cal. Feb. 7, 2021) .............................................6, 7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .........................................................................................8, 9

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000)..........................................................................................................5

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .....................................................................................8, 10

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 2485382 (N.D. Cal. June 8, 2017) .....................................................................4

**State Cases**

*Baum v. Duckor, Spradling & Metzger*,
   72 Cal. App. 4th 54 (1999) ...........................................................................................4, 5

*Casiopea Bovet, LLC v. Chiang*,
   12 Cal. App. 5th 656 (2017) ..............................................................................................5

*Curtis v. Kellogg & Andelson*,
   73 Cal. App. 4th 492 (1999) ......................................................................................1, 4, 5

*Goodley v. Wank & Wank, Inc.*,
   62 Cal. App. 3d 389 (1976) ...............................................................................................2

*Jackson v. Rogers & Wells*,
   210 Cal. App. 3d 336 (1989) ..........................................................................................2, 4

*Kirsch v. Duryea*,
   21 Cal. 3d 303 (1978) .....................................................................................................10

*Kracht v. Perrin, Gartland & Doyle*,
   219 Cal. App. 3d 1019 (1990) .......................................................................................2, 4

*Moore v. Phillips*,
   176 Cal. App. 2d 702 (1959) ............................................................................................9

1875349

*PacLink Commc'ns Int'l, Inc. v. Super. Ct.*,
    90 Cal. App. 4th 958 (2001) ........................................................................................6, 7

*Sutter v. General Petroleum Corp.*,
    28 Cal. 2d 525 (1946) ......................................................................................................7

*White Mountains Reinsurance Co. of Am. v. Borton Petrini, LLP*,
    221 Cal. App. 4th 890 (2013) .....................................................................................3, 4

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................7, 8, 10

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

## I.   INTRODUCTION

Assignees' Opposition ("Opp.") attempts to rewrite the Complaint and California law to save an irredeemably deficient pleading. Three independent reasons warrant dismissal.

*First*, Assignees lack standing because legal malpractice claims are nonassignable under California law. Assignees' argument that the "'gravamen' of the action is fraud," rather than malpractice, ignores California authority holding that malpractice claims based on intentional misrepresentations cannot be assigned, and that fraud claims themselves are also non-assignable.

*Second*, Assignees lack standing because Solarmore itself lacked standing to seek derivative losses. Just as Judge Mendez twice found on similar facts in *Solarmore I*, Solarmore's alleged harm was "merely incidental to the injury suffered by the [Fund] LLC" of which it was a member, and can be asserted only through a derivative action.[1]

*Third*, each claim is pleaded without the requisite particularity.

Because amendment will not remedy a lack of standing, Nixon respectfully requests that the Court dismiss the Complaint with prejudice.

## II.   ARGUMENT

### A.   California law prohibits assignment of legal malpractice actions.

The Opposition does not dispute that California law prohibits assignment of legal malpractice claims. *See* Opp. 4. Instead, Assignees argue that the "gravamen the claims are [sic] misrepresentation and fraudulent omissions, not professional negligence." *Id*. But the Complaint's text belies that contention and Assignees' arguments do not support an exception from that "well-established" California rule. *Curtis v. Kellogg & Andelson*, 73 Cal. App. 4th 492, 504 (1999).

#### 1.   The gravamen of the Complaint is legal malpractice.

Assignees' argument that the "'gravamen' of the action is fraud . . . not legal malpractice," Opp. 1, is wrong. The Complaint alleges a "Legal Malpractice" claim for breach of a "duty to use the skill, prudence, and diligence as commonly exercised by other members of the legal profession," Compl. ¶ 149, and each remaining claim has at its core the same allegation that

---

[1] *See Solarmore Mgmt. Servs., Inc. v. Bankr. Est. of DC Solar Sols.*, No. 19-cv-02544, 2021 WL 3077470, at *4 (E.D. Cal. July 21, 2021) ("*Solarmore I*").

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1   Nixon breached duties to Solarmore arising out of Nixon's role as attorney. *See* Compl. ¶¶ 112,

2   114, 118, 123, 125-26, 133, 136, 138, 144, 163. Each claim thus sounds in malpractice—

3   prohibiting assignment. *See Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 348 (1989)

4   (assignment prohibited where the "gravamen" of the complaint is for malpractice).

5          California courts have expressly rejected Assignees' proffered exception based on an

6   attorney's alleged intentional misrepresentation.[2] In *Jackson*, as here, the plaintiff argued that the

7   rule "prohibiting assignment of legal malpractice causes of action . . . should not bar [his] action"

8   because his claims "sound[ed] in fraud" and his attorneys engaged in an "intentional course of

9   misconduct." *Id.* at 338, 340; *see also* Opp. 5 (arguing that allegations of "intentional deception"

10  precluded finding that claims sounded in malpractice). The *Jackson* court held that the alleged

11  misconduct "arose entirely out of" an attorney-client relationship, so while styled as fraud, the

12  claims' resolution would require evaluation of "strategic choices made in the past in a

13  confidential relationship in which the current plaintiff had no part." *Id.* at 346. As a result, the

14  gravamen of the action was malpractice. *Id.* at 348. The same is true here. *See* Mot. 8-9.

15         Even if Assignees were correct that the "'gravamen' of the action is fraud," assignment

16  would *still* be prohibited. Opp. 1. Under California law, "[a] right to complain of fraud is not

17  assignable." *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 398 (1976). There is a narrow

18  exception to that rule for fraud claims that "involve rights in specific property obtained by fraud

19  or deceit," but "disputed billings which arose from an ongoing attorney-client relationship are not

20  sufficiently analogous to a specific, identifiable piece of property . . . to support the assignability

21  of a cause of action for fraud." *Jackson*, 210 Cal. App. 3d at 347.

22         Thus, the assignment of this action is barred by California public policy.

23                 **2.      California law rejects Assignees' novel "clear nexus" exception.**

24  ─────────────────

[2] Assignees' reliance on the *Landmark* case is misplaced. Opp. 4. *Landmark* relates to a statute of

25  limitations defense concerning malpractice and fraud claims, not the prohibition on assigning
    malpractice claims. The *Landmark* court dismissed the plaintiff's malpractice claim, but

26  eschewed the "'gravamen' approach" in declining to dismiss the fraud claim because the plain
    language and caselaw for the statute at issue compelled it to do so. *See Landmark Screens, LLC v.*

27  *Morgan, Lewis & Bockius LLP*, 2009 WL 160214, at *6 n.5 (N.D. Cal. Jan. 20, 2009). In
    assignment cases, California courts are clear that "[a]n injury suffered by reason of a defendant's

28  conduct gives rise to a single cause of action, regardless of how many theories are pled by the
    complaint." *Kracht v. Perrin, Gartland & Doyle*, 219 Cal. App. 3d 1019, 1022 (1990).

2

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1    Next, Assignees argue that the malpractice claim is assignable because it does not

2  "implicate[]" "the public policy considerations underlying the rule against assignment." Opp. 6.

3  In doing so, Assignees ask this Court to adopt a broad and novel exception to the general rule

4  precluding assignment of malpractice claims—namely, whenever the assignee and assignor have

5  "a clear nexus." Opp. 6, 10. California law forecloses such an exception.[3]

6    California courts recognize only **one** "narrow" exception to the rule prohibiting

7  assignment, which is set forth in *White Mountains* and is limited to "the particular facts" of that

8  case. *White Mountains Reinsurance Co. of Am. v. Borton Petrini, LLP*, 221 Cal. App. 4th 890,

9  909 (2013); *see also Lesa, LLC v. Fam. Tr. of Kimberley & Alfred Mandel*, 2016 WL 1446770, at

10  *8 (N.D. Cal. Apr. 13, 2016) (describing *White Mountains* as the "one exception to the rule of

11  nonassignability of legal malpractice claims"). *White Mountains* requires an assignee show that

12  the assignment: (1) is an "incidental part of a larger commercial transfer"; (2) is not

13  "functionally analogous to the assignment of a bare malpractice cause of action"; and (3) involves

14  "an insurance company." *In re S&B Surgery Ctr.*, 707 F. App'x 928, 929 (9th Cir. 2017) (internal

15  quotations and alteration omitted). The Ninth Circuit has recognized this "White Mountains test"

16  determines when assignment of a malpractice claim is permitted and emphasized that the

17  exception is narrow.[4] *Id*. None of the three factors are met here. The exception does not apply.

18    California courts have also rejected Assignees' proposed "clear nexus" exception,

19  consistently enforcing the prohibition on assignment between parties with a prior relationship. *See*

20

---

21  [3] Plaintiffs briefly argue that assignment should also be allowed where the transfer occurs after
the Assignor files suit, Opp. 8, but cite no authority to support that exception. Allowing parties to

22  commodify malpractice claims by filing a Complaint **then** transferring claims (as Solarmore did
here) would encourage circumvention of the well-established rule prohibiting assignment through

23  a simple procedural mechanism. Any assignment of a malpractice claim threatens to undermine
attorney-client trust, weaken zealous advocacy, increase malpractice claims, and commercialize

24  claims, regardless of whether the complaint is filed by the assignor or assignee. Plaintiffs'
procedural ploy exception should be rejected.

25  [4] Other federal courts interpret California law in accord. *See Busbice v. Vuckovich*, 2018 WL
6272047, at *3 (N.D. Ill. Dec. 1, 2018) ("*White Mountains* recognized only a very narrow

26  exception to the prohibition on assignment of legal malpractice claims: such claims may be
assigned when the assignment is only a small, incidental part of a larger commercial transfer

27  between insurance companies."); *In re Gabriel Techs. Corp.*, 2017 WL 6016287, at *3 (Bankr.
N.D. Cal. Dec. 4, 2017) (*White Mountains* recognized exception where the assignment "was only

28  a small, incidental part of a larger commercial transfer").

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1    *Curtis*, 73 Cal. App. 4th at 505 (prohibiting assignment from company to its sole owner); *Baum v.*

2    *Duckor, Spradling & Metzger*, 72 Cal. App. 4th 54, 58 (1999) (prohibiting assignment from

3    debtor to creditor); *Kracht*, 219 Cal. App. 3d at 1022 (prohibiting assignment between

4    adversaries); *Jackson,* 210 Cal. App. 3d at 346 (same).

5            Assignees rely on a single, unpublished federal case to support their proposed "clear

6    nexus" exception. Opp. 7. But the *3123 SMB* decision was not so broad. There, the assignment

7    occurred "as part of a larger assignment that included the property at issue in the underlying

8    lawsuit," so the case was not analogous "to situations involving 'the assignment of a bare cause of

9    action for fraud.'" *3123 SMB LLC v. Horn*, 2015 WL 13762612, at *2 (C.D. Cal. Apr. 13, 2015).

10   Here, Solarmore's assignment involved no more than bare claims. *See* ECF 52.[5]

11           Finally, special policy concerns counsel against assignment where, as here, the assignee is

12   a client's former adversary. "If an attorney perceives that his current adversary might some day

13   be entitled to sue him for malpractice," he may hesitate to pursue his clients' interests vigorously

14   "for fear of providing motivation . . . for a later malpractice action." *Kracht*, 219 Cal. App. 3d at

15   1024. That is precisely what happened in this case: Nixon represented Solarmore (the Plaintiff) as

16   investor in the underlying transaction, and the Funds (the Assignees here) stood on the other side,

17   as investees. *See Waymo LLC v. Uber Techs., Inc.*, 2017 WL 2485382, at *12 (N.D. Cal. June 8,

18   2017) (describing an investor and potential investee as "adversar[ies] because they were

19   on opposite sides of a potential transaction"). As in *Jackson*, permitting Solarmore to assign its

20   claims would undermine "several important policy considerations," including "the need to

21   preserve the element of trust between attorney and client, which could be impaired if the attorney

22   perceives a future threat of the client's assignment to a stranger or adversary of a legal

23   malpractice claim." *Jackson*, 210 Cal. App. 3d at 347–48. Allowing assignment would also

24   "generate increased malpractice lawsuits"[6] and "encourage commercialization of claims." *Curtis*,

25

26   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5] Even if *3123 SMB* applied, the Ninth Circuit subsequently rejected reading the *White Mountains*
     holding more broadly than its facts. *See In re S&B Surgery Ctr.*, 707 F. App'x at 929.
27   [6] This is particularly true if, as in *Jackson*, Solarmore's assignment occurred in the context of a
     settlement agreement. *Jackson*, 210 Cal. App. 3d at 348. If litigants may obtain more favorable
28   terms by assigning malpractice claims in settlement, the number of claims will skyrocket.

                                                    4
─────────────────────────────────────────────────
REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
                           MOTION TO DISMISS
                      Case No. 2:20-cv-02446-TLN-DB

1875349

1    73 Cal. App. 4th at 505.

2         California law simply does not support the broad exception that Assignees advance for

3    parties with a "clear nexus," and instead prohibits the assignment of claims at issue here.

4         **3.    Assignees lack independent standing to assert Solarmore's claims.**

5         Finally, Assignees make a Hail Mary argument that they have "independent standing to

6    sue Nixon for legal malpractice as intended third-party beneficiaries." Opp. 9. But of course,

7    Assignees have not joined this suit as parties and brought claims as third-party beneficiaries;

8    rather, they are attempting to prosecute the action as Assignees of Solarmore's claims.[7] "An

9    assignee 'stands in the shoes' of the assignor" and accedes only to rights that can be "no greater

10   than those of the assignor." *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App. 5th 656, 663 (2017);

11   *see also Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) (holding

12   that an assignee has standing "to assert the injury in fact ***suffered by the assignor***") (emphasis

13   added). Because Solarmore does not allege in the Complaint that it is a third-party beneficiary of

14   Nixon's services, the Assignees cannot base their standing on such a claim.

15        In sum, Assignees lack standing to prosecute claims that are nonassignable under

16   California law and thus the Complaint must be dismissed. *See Curtis*, 73 Cal. App. 4th at 503,

17   507 (dismissing assignees' legal malpractice claims for lack of standing). And because

18   Assignees' have not shown "a reasonable probability [this] pleading defect can be cured by

19   amendment," the Complaint should be dismissed with prejudice. *Baum*, 72 Cal. App. 4th at 63.

20        **B.    Assignees lack standing to pursue derivative claims.**

21        The Complaint should also be dismissed for the independent reason that Solarmore lacks

22   standing to seek the derivative losses alleged in this direct action, as Judge Mendez recently held

23   in the related *Solarmore I* action. Nothing in Assignees' Opposition overcomes that defect.

24

25   [7] Assignees separately sued Nixon in Los Angeles Superior Court in December 2019 for hundreds
     of millions of dollars, based on claims arising out of the ***exact same*** transactions at issue here,
26   including a malpractice claim, among others. *See* Declaration of Christine M. Zaleski in Support
     of Defendants' Motion to Dismiss, Ex. E ¶¶ 516-21. *Solar Eclipse v. CohnReznik,* Case No.
27   19STCV45775. That case is nearing the close of discovery and set for trial next summer. Even if
     Assignees had brought independent claims here—they have not—this Court can and should
28   exercise its discretion to abstain from hearing claims that are pending in a mature, parallel state
     action. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 820 (1976).

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1    Assignees fail to distinguish their Complaint from Judge Mendez's two orders dismissing

2    claims in the substantially similar *Solarmore I* action for lack of standing. *See Solarmore I*,

3    2021WL 3077470, at *2 (E.D. Cal. July 21, 2021) ("*Solarmore I* 2021 Ord.*"*); *Solarmore I*, 2022

4    WL 358245 (E.D. Cal. Feb 7, 2022) ("*Solarmore I* 2022 Ord.*"*). To determine if claims are

5    derivative, the Court must focus on whether the loss alleged is incidental or direct, not on the way

6    the claims were styled. *See Eurolog Packing Grp., N. Am., LLC v. EPG Indus., LLC*, (JEMX),

7    2019 WL 1873295, at *3 (C.D. Cal. Feb. 14, 2019). Here, as in *Solarmore I*, the Complaint

8    impermissibly seeks damages resulting out of the "destruction of or diminution in the value of . . .

9    [a shareholder's] stock." *PacLink Commc'ns Int'l, Inc. v. Super. Ct.*, 90 Cal. App. 4th 958, 965

10   (2001). Specifically, Solarmore claims losses resulting from the Funds' investments in the MSGs,

11   including the "loss of its expectation profits from the sale of the MSGs" (profits which could only

12   ever go to the Funds that owned the MSGs) and "the cost of acquiring one percent in each of the

13   Funds" (the value of which diminished following DC Solar's collapse). Compl. ¶ 110, 121, 129.

14   In *Solarmore I*, the Court found similar damages resulting "from the Funds' investment in the

15   MSGs" could not be sought by direct action. *Solarmore I* 2022 Ord.*,* 2022 WL 358245, at *3. The

16   Court should hold the same here.[8]

17       In their Opposition, Assignees focus on just one claim for relief that they contend "cannot

18   be the Funds' damages": attorneys' fees paid to Nixon. Opp. 13-14, 17; Compl. ¶ 38. To avoid

19   dismissal, "a plaintiff must demonstrate standing for each claim he seeks to press" and

20   "demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*,

21   547 U.S. 332, 335 (2006). Assignees make no attempt to explain why their claims for loss of

22   expectation profits, the cost of Solarmore's investment, the cost of locating MSGs, or tax losses

23   are direct damages, despite authority to the contrary. *See Solarmore I* 2022 Ord.*,* 2022 WL

24

---

25   [8] The smaller categories of damages concerning "expenses to locate the . . . MSGs that existed"
     and "penalties and interest to the IRS" are also not direct damages. Compl. ¶ 110. In *Solarmore I*
26   the court expressly prohibited Solarmore from seeking recovery for the "cost of locating the
     MSGs" and "resulting tax losses" as derivative damages. *Solarmore I* 2022 Ord.*,* 2022 WL
27   358245, at *3. Other categories of damages allege harm to the Jansens individually, who have
     been voluntarily dismissed from this case, including "costs of acquiring the hundred percent
28   ownership in Solarmore Management" and "any damages that result from the personal guarantees
     that were required in each of the Fraud Documents." Compl. ¶¶ 110, 121, 129.

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

358245, at \*3. Moreover, these undisputed categories, including $70,000,000 in "loss of expectation profits," dwarf the $608,000 claim for attorneys' fees. Compl. ¶ 110, 81. Because the vast majority of the damages are derivative in nature, "the gravamen of the wrong alleged in the pleadings" is centered on harm to the Funds, not Solarmore. *PacLink*, 90 Cal. App. 4th at 965.

Assignees further attempt to distinguish *Solarmore I* by arguing that here "Solarmore seeks redress for harm that Nixon caused Solarmore by inducing Solarmore to form and invest in the Funds." Opp. 13. But that argument is inconsistent with the allegations in the Complaint. The Complaint alleges that the "***Carpoffs*** would create investment funds," not Solarmore. Compl. ¶ 22. In *Sutter v. General Petroleum Corp.*, 28 Cal. 2d 525 (1946), on which Assignees rely, "the Court found that the plaintiff . . . was personally induced to form a corporation, and the subsequent loss in value of his stock was a measure of his damage for the fraudulent inducement," *Drazan v. Atl. Mut. Ins. Co.*, 2010 WL 2629576, at \*3 (N.D. Cal. June 29, 2010). Here, Solarmore admits that it did not create the Funds, Compl. ¶ 22, and it experienced only a derivative injury resulting from losses "from the ***Funds'*** investment in the MSGs." *Solarmore I*, 2022 Ord., 2022 WL 358245, at \*3. *Sutter* and its progeny are inapt.

Finally, Assignees argue that three of the Counts—for breach of fiduciary duty, breach of contract, and legal malpractice—are based on duties that Nixon owed to Solarmore directly. Opp. 14. But again, in determining whether Solarmore is bringing a derivative or direct action, the Court looks at "the nature of the wrong and to whom the relief should go," *not* the style of the claim. *Hammett v. Sherman*, 2021 WL 4692949, at \*11 (S.D. Cal. Oct. 7, 2021). The enumerated claims primarily seek damages for expectation profits and the cost of acquiring a stake in the Funds. Compl. ¶ 110, 121, 129, 152. Those are damages that result from the "destruction of or diminution in the value of [Solarmore's] stock." *PacLink*, 90 Cal. App. 4th at 965. They are derivative in nature and subject to dismissal.

### C.  The Complaint fails to allege sufficient facts to sustain each claim.

Assignees do not dispute that their Negligent Misrepresentation, Aiding and Abetting Negligent Misrepresentation, and Breach of Fiduciary Duty claims sound in fraud, and are subject to the heightened Fed. R. Civ. P. 9(b) pleading standard. Because each fails to allege "the who,

1875349

what, when, where, and how of the misconduct charged," they should be dismissed. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). The remaining claims fail to allege sufficient facts "to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

### 1.   Negligent Misrepresentation, Breach of Fiduciary Duty (Counts IV, I)

The Negligent Misrepresentation (Count IV) and Breach of Fiduciary Duty (Count I) claims are based on the same insufficiently pleaded alleged misrepresentations and fail under Rule 9(b). *See* Opp. 17. It is black-letter law that "[v]ague or conclusory allegations are insufficient to satisfy Rule 9(b)'s 'particularity' requirement." *Leonberger v. Wells Fargo Bank*, 2013 WL 3242298, at *2 (N.D. Cal. June 25, 2013). Assignees thus must allege the "specific content of the false representations" to avoid dismissal. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotations omitted).

In their Opposition, Assignees fail to identify with particularity the alleged misrepresentation underlying Counts IV and I. Instead, they parrot the vague language of the Complaint, stating that "Nixon . . . misrepresented the Value of the MSGs in the Tax Opinions." Opp. 15. While the Assignees submitted a Tax Opinion[9] for the Court's consideration, they fail to identify any statement in that 103-page document constituting a representation about the MSGs' value. *Swartz*, 476 F.3d at 764. Why? Because Nixon ***never represented*** the value of MSGs in it. Because Assignees fail to identify the "specific content" of the alleged misrepresentation, the vague allegation that Nixon misrepresented of "the Value of the MSGs" is insufficient. *Id.*

Assignees also base their claims on Nixon's alleged representation that "the Funds were not under audit." Opp. 16. Assignees again do not allege with particularity where or how Nixon purportedly misrepresented whether the Funds were under audit, failing to point to any language in the Tax Opinion to support their claim. *Id.* The allegations in the Complaint undermine the claim that the audit could plausibly have been misrepresented: Plaintiff alleges Nixon ***disclosed***

---

[9] *See* Exhibit A to the Declaration of Stephen Sorenson; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (documents that "are not physically attached to the complaint . . . may be considered [on a motion to dismiss] if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them") (internal quotations omitted).

1    the IRS audit to Carpoff when he was Solarmore's majority owner and manager. *Id.* ¶¶ 60-62; 19-

2    21; 76. By disclosing the audit to Carpoff, Nixon disclosed the audit to Solarmore. *See Moore v.*

3    *Phillips*, 176 Cal. App. 2d 702, 709 (1959) ("That a corporation can have knowledge only

4    through its officers and agents is elementary."). Finally, Assignees fail to explain how

5    Solarmore's knowledge of the audit would have affected its actions, given that the audit is not

6    alleged to have resulted in any adverse action against the taxpayer, and thus fail to allege reliance.

7             **2.    Aiding and Abetting Negligent Misrepresentation (Count VII)**

8             Assignees attempt to re-write the Aiding and Abetting Negligent Misrepresentation claim

9    (Count VII) to avoid dismissal. Count VII alleges that the "Principals" induced "the execution" of

10   the "Fraud Documents" as part of "the strategy for Jansen to become the one-hundred percent

11   owner of Solarmore Management[.]" Compl. ¶ 158. The Opposition pivots to rely on a factual

12   allegation that "[t]he Principals ensured that Jansen was informed that the MSGs had a [certain]

13   value." Opp. 16 (quoting Compl. ¶ 80). Both allegations fail to answer the newspaper questions:

14   who, what, when, where, and how the statement was made. As to the former statement, Assignees

15   concede that the allegations are insufficient by failing to address them. *See Brown v. Takeuchi*

16   *Mfg. Co. (U.S.), Ltd.*, 2021 WL 3723218, at *4 (E.D. Cal. Aug. 23, 2021) ("Failure to oppose an

17   argument raised in a motion to dismiss constitutes waiver of that argument."). As to the latter,

18   although the Complaint alleges that the "Principals" made this statement, the alleged "Principals"

19   are not identified with particularity and include individuals such as "the Carpoffs" and

20   unspecified "others." Compl. ¶ 62. While the Opposition speculates that DC Solar's accountant,

21   Ronald Roach, was the speaker, the Complaint does not so allege, nor does it explain what, if

22   anything, Nixon had to do with Roach in connection with that statement. *Id.* ¶ 80. The statement

23   that an unspecified group "ensured Jansen was informed" of certain information fails to plead the

24   requisite "what" or "specific content" of the allegedly fraudulent statement, as well as when,

25   where, and how the statement was made. *Swartz*, 476 F.3d at 764.

26             **3.    Legal Malpractice (Count V)**

27             Count V, legal malpractice, fails to allege sufficient facts to give rise to a plausible claim.

28   The Complaint alleges in conclusory fashion that Nixon breached a duty to Solarmore but does

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1    not allege any specific act or omission amounting to breach. Compl. ¶ 150. The vague allegation

2    that Nixon "perpetuat[ed] the Fraud Documents" is insufficient to provide notice of the claim. *Id.*

3        Recognizing this weakness, Assignees pivot in their Opposition to rely on the allegations

4    underlying their Negligent Misrepresentation claim. Opp. 17. But such a claim based on an

5    alleged misrepresentation is subject to Rule 9(b)'s heightened pleading standard. *See Vess*, 317

6    F.3d at 1103-04; *see also Ivey v. Spilotro*, 2012 WL 2788980, at *10 n.1 (D. Nev. July 9, 2012)

7    (applying Rule 9(b) to legal malpractice claim). To the extent Count V is based on purported

8    misrepresentations, it fails for the reasons described above in Section II.C.1.

9             **4.**       **Breach of Contract (Count II)**

10        Assignees misconstrue Nixon's argument for why the Breach of Contract claim (Count II)

11    should be dismissed. Opp. 18. Nixon does not quibble with facts underlying the claim. Instead,

12    the Complaint fails to allege any legally cognizable contractual duty that Nixon breached. The

13    contract here is one for legal services. Compl. ¶ 123. Assignees contend that Nixon breached the

14    contract when Nixon "incorrectly advised Solarmore." Opp. 18. But California law is

15    unambiguous that attorneys have no implied contractual obligation to render 100% accurate legal

16    advice. Courts hold that "in the absence of an ***express agreement***," an attorney is ***not*** "an insurer

17    of the soundness of his opinions or of the validity of an instrument that he is engaged to draft."

18    *Kirsch v. Duryea*, 21 Cal. 3d 303, 308 (1978). Here, no express agreement is alleged. As a result,

19    the claim that Nixon failed to provide accurate legal advice is insufficient to constitute breach.

20             **5.**       **Unjust Enrichment (Count III)**

21        Assignees fail to address Nixon's argument that "a claim for unjust enrichment cannot

22    stand alone as an independent claim for relief." *Iezza v. Saxon Mortg. Servs., Inc.*, 2010 WL

23    3834041, at *2 (C.D. Cal. Sept. 28, 2010); Mot. 20. Assignees thus waived any argument in

24    response. *See Brown*, 2021 WL 3723218, at *4.

25   **III.**     **CONCLUSION**

26        Nixon respectfully requests that the Court dismiss the Complaint with prejudice and grant

27    its unopposed Request for Judicial Notice filed with the Motion to Dismiss at ECF 58-7.

28

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349

1    Dated:  July 22, 2022                                    KEKER, VAN NEST & PETERS LLP

2

3                                                      By:    s/ Elliot R. Peters
                                                              ELLIOT R. PETERS
                                                              ERIC H. MACMICHAEL
4                                                             JULIA L. ALLEN
                                                              BENJAMIN D. ROTHSTEIN
5                                                             BAILEY W. HEAPS
                                                              DEEVA SHAH
6                                                             CHRISTINE M. ZALESKI

7                                                             Attorneys for Defendants
                                                              NIXON PEABODY LLP and
8                                                             FORREST DAVID MILDER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS NIXON PEABODY, LLP AND FORREST DAVID MILDER'S
MOTION TO DISMISS
Case No. 2:20-cv-02446-TLN-DB

1875349